[No. B124680. Second Dist., Div. Seven. July 26, 1999.]

CARL LOUIS AMOS, a Minor, etc., Plaintiff and Appellant, v. ALPHA PROPERTY MANAGEMENT et al., Defendants and Respondents.

896

**COUNSEL**

Lee Arter for Plaintiff and Appellant.

Marrone, Robinson, Frederick & Foster, J. Alan Frederick and Peter Y. Lee for Defendants and Respondents.

**OPINION**

**JOHNSON, J.**—When he was just two and a half years old, Carl Louis Amos fell out of a low, open, unprotected window in a common passageway

on the second floor of his apartment building. He seeks to recover from the owners and managers of the building for the severe injuries he suffered in the fall. Relying on our opinion in *Pineda* v. *Ennabe* (1998) 61 Cal.App.4th 1403 [72 Cal.Rptr.2d 206], the trial court granted summary judgment to the defendants on the ground "defendants had no duty to assure that plaintiff did not fall out of the subject window." We conclude the trial court's reliance on *Pineda* was misplaced. Therefore, we reverse.

## FACTS AND PROCEEDINGS BELOW

Carl and his mother were tenants of the apartment building where the accident took place. On the afternoon of the accident Carl was visiting a neighbor and her son in their apartment on the second floor. The neighbor placed two-and-a-half-year-old Carl in front of the television set in her living room and then went into the kitchen to prepare lunch for her son. After a few minutes she heard someone yell a baby had fallen out a window. She then noticed her front door was open and Carl was missing.

The window from which Carl fell was at the end of the second floor hallway. The building manager testified, "That window is always open." Although the window had a screen, the tenants frequently removed the screen so they could throw their trash out the window into the Dumpster below. The screen was off the window when Carl fell. The record shows the window was the "sash" type which has an upper and a lower section. This type of window is opened by raising the lower section so it overlaps with the upper section. When the lower section was raised completely it created an opening approximately 30 inches wide and 27 inches high, in other words, a 5 ½ square-foot hole in the wall. The sill was approximately 28 inches above the floor. At the time of the accident, there was nothing to deter, hinder or restrain a two-year-old such as Carl from climbing through the window and falling onto the concrete alley below. The lease Carl's mother signed included "house rules" which provided, among other things, "Children are not allowed to play in hallways, stairways, or other common areas of the project."

As a result of the fall from the window, Carl suffered severe head injuries and a lacerated liver. He brought this action through his guardian ad litem alleging negligence on the part of the building's owners and managers. Defendants filed two motions for summary judgment contending they neither owed nor breached any duty to Carl. Both motions were denied. However, following our decision in *Pineda* v. *Ennabe*, *supra*, 61 Cal.App.4th 1403, the trial court granted defendants' motion for reconsideration and ruled defendants owed no duty to Carl. Carl filed a timely appeal from the subsequent judgment.

For the reasons explained below, we conclude *Pineda* is distinguishable from the present case. Defendants have failed to show, as a matter of law, they neither owed nor breached a duty of care to Carl.

## DISCUSSION

### I. *A Landlord Owes a Duty to the Tenant to Exercise Due Care in Maintaining and Repairing the Common Areas of the Building.*

 It is beyond dispute that "traditional tort principles impose on landlords . . . a duty to exercise due care for the resident's safety in those areas under their control." (*Frances T.* v. *Village Green Owners Assn.* (1986) 42 Cal.3d 490, 499 [229 Cal.Rptr. 456, 723 P.2d 573, 59 A.L.R.4th 447].) Furthermore, it has been held in California and other jurisdictions that this duty includes within its scope adopting *reasonable precautions* to prevent young children from toppling out of windows in common areas of the building.[1] The following cases illustrate this principle. Each involves a child who fell from an open window located in a common passageway or in his or her own apartment.

The closest California case on point is *Roberts* v. *Del Monte Properties Co.* (1952) 111 Cal.App.2d 69 [243 P.2d 914] in which the court affirmed a judgment for a seven-year-old tenant who fell through an open fourth floor window while playing on a pile of mattresses and furniture in a hallway. When the child "was on the top mattress he accidentally tumbled backward towards the open window behind the pile, the screen in it gave way, and the boy and screen fell into the patio." (*Id.* at p. 72.) As in the present case, the defendant's negligence in *Roberts* was not predicated on the condition of the screen but on the fact a pile of furniture and mattresses, attractive to children, was near an unprotected, open window. (*Ibid.*) In upholding the verdict for the child, the court held the landlord owed the child a duty "based on the general principle that the person in possession of premises must take such precautions for the safety of his business invitees as are reasonable under all the circumstances, considering their relation, the burden of the interference with his own affairs and the danger to the invitees to be anticipated, and that special caution is required in behalf of invitees of

---

[1]Carl does not contend, as the trial court suggests, the defendants had a duty to assure no child could fall from an upper story window under any circumstance. Landlords are not insurers of their tenants' safety (see *Crane* v. *Smith* (1943) 23 Cal.2d 288, 296 [144 P.2d 356]) and are not required to make their premises absolutely "child proof" by providing every possible safeguard against injury to children on their premises. (See *Pineda* v. *Ennabe, supra,* 61 Cal.App.4th at p. 1405.) This does not mean, however, defendants had no duty to take reasonable precautions against the foreseeable risk a child could fall from an upper story hall window. (See cases discussed below.)

immature age whose inability to appreciate and propensity to ignore certain dangers he ought to consider." (*Id.* at p. 74.) The court quickly disposed of defendant's argument it could not be held liable for the plaintiff's injuries because the building's tenants were under orders not to allow their children to play in the hallways. This order, the court pointed out, was not directed to the children but to their parents. (*Ibid.*)[2]

In *Freeman* v. *Mazzera* (1957) 150 Cal.App.2d 61, 62-63 [309 P.2d 510], the court reversed a judgment of nonsuit against a minor injured in a fall from an opening off the landing of the stairway in his apartment building. The opening was 32 inches wide and 9 feet 8 inches high. The bottom of the opening was 19 inches above the floor of the landing. The lower part of the opening was protected by an iron lattice frame attached to the outside of the building. Children had been in the habit of playing in this opening, using its lower edge as a platform on which to stand or sit. The four-year-old plaintiff was playing on this edge when the iron lattice gave way and he fell to the ground below. The court held the landlords owed their tenants "a duty to use ordinary care to keep [the stairway] area in a safe condition." (*Id.* at p. 63.) There was evidence the landlords breached this duty because they failed to inspect or repair the lattice work even though they knew young children played on the window ledge and knew the lattice had been loose for at least a year before the accident. (*Ibid.*) The court rejected the landlords' argument they owed no duty in this case because the injured plaintiff was putting the opening and the lattice to a use not reasonably intended. Citing *Roberts* v. *Del Monte Properties Co.*, *supra*, 111 Cal.App.2d 69, the court held this argument "does not apply to small children." (150 Cal.App. at p. 63.)

A landlord's duty to a child tenant was also discussed in *Schlemmer* v. *Stokes* (1941) 47 Cal.App.2d 164 [117 P.2d 396]. In *Schlemmer*, a three-year-old child climbed onto the arm of a davenport in his apartment and leaned against a window screen to watch some children playing in the yard below. The screen gave way and he fell out the window. The child sued the landlord alleging the screen had been improperly installed and maintained. On the issue of duty, the court held the landlord owed plaintiff "the duty of exercising reasonable care to keep the premises in a safe condition." (*Id.* at p. 167.) A judgment for the landlord was affirmed on the ground there was insufficient evidence to support a finding the landlord breached her duty. (*Ibid.*)

The 10-year-old plaintiff in *Madison* v. *Reuben* (1970) 128 Ill.App.2d 11 [262 N.E.2d 794] was sitting on the sill of an open window in a common

[2]As we discuss below, a parent's negligence in supervising a child may be a factor in determining causation—an issue not raised by defendants here—but is generally not a factor in determining duty, although, as *Pineda* demonstrates, there are exceptions to this rule.

hallway attempting to remove some trash stuck to her shoe. She lost her balance and fell two stories to the ground below. The evidence showed the window formerly had a sash and panes but they had been broken approximately two weeks earlier and not replaced. The landlord appealed from a judgment for the plaintiff contending the evidence was insufficient to support a finding of breach of duty or proximate cause. Implicitly holding the landlord owed a duty of care to the plaintiff, the appellate court stated: "Whether defendant's failure to install the necessary sash and window panes was the proximate cause of plaintiff's injury was an issue . . . for the trier of fact to decide." Based on a photograph of the window with the sash and panes in place, the court concluded: "The sash appears to be of sturdy construction and mounted to the window frame in such a way that it cannot be said plaintiff would have been injured had they been in place at the time of the accident." (*Id.* at p. 796.)

In the month of July, a three-year-old Louisiana boy fell out of a second story apartment window which his mother had left open for ventilation because the landlord had failed to repair the air conditioner. The window was such as might be constructed to receive French doors and had a ledge within the window opening, only inches off the ground, in which a child could sit, stand or kneel. The window had a lightweight aluminum screen. There were no guard rails of any kind. Affirming a judgment for the child in *Brady on behalf of Brady* v. *Rivella Dev., Inc.* (La.Ct.App. 1982) 424 So.2d 1104 (*Brady*), the Court of Appeal held the landlord had a duty not to create or maintain an unreasonable risk of harm to others and the trial court's finding the window was not reasonably safe for its intended uses—ventilation and view—was supported by the evidence. (*Id.* at pp. 1105-1106.) In upholding the judgment in *Brady*, the court distinguished an earlier decision which was factually on all fours with *Pineda* v. *Ennabe, supra,* 61 Cal.App.4th 1403. (See discussion below.)

Based on the decisions discussed above, we hold the landlord and manager in the present case had a duty to take reasonable precautions to prevent young Carl from falling out of the large hole they maintained at the end of the second floor hallway.

II. *A Triable Issue of Fact Exists as to Whether Defendants Breached Their Duty of Care to Carl by Maintaining a Low, Open, Unprotected Hallway Window on the Second Floor of the Building, Knowing Young Children Were Likely to Play in That Area.*

As the moving parties, defendants bore the burden of producing evidence to show they did not breach their duty of care to Carl. (Code Civ. Proc.,

§ 437c, subd. (o)(2).) In doing so, they could rely on the deposition of plaintiff's expert as well as their own witnesses. (Code Civ. Proc., § 437c, subd. (b).)

Defendants argue they negated Carl's ability to establish breach of duty because the undisputed expert testimony showed the window in question met all applicable fire, building and safety codes. They further contend Carl offered no expert testimony to contradict defendants' experts' testimony the window was safe, an insect screen on the window would not necessarily have prevented Carl's fall, and bars or similar devices on the window would have created an unreasonable risk to the tenants in the event of a fire.

A. *Compliance With Safety Regulations Does Not Necessarily Negate Breach of Duty.*

Defendants contend the fact the window in question met all applicable fire, building and safety codes establishes due care as a matter of law. There is no merit to this argument. (*Nevis* v. *Pacific Gas & Electric Co.* (1954) 43 Cal.2d 626, 630 [275 P.2d 761]; *Perrine* v. *Pacific Gas & Elec. Co.* (1960) 186 Cal.App.2d 442, 448 [9 Cal.Rptr. 45]; and see 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 756, p. 96 and cases cited therein.) The correct rule was stated in *Perrine*: "We are mindful that even though P. G. & E. complied with all applicable governmental safety regulations, this would not serve to absolve it from a charge of negligence, but just negligence *per se*, for one may act in strict conformity with the terms of such enactments and yet not exercise the amount of care which is required under the circumstances." (186 Cal.App.2d at p. 448, citations omitted.)

Thus, although the fact the window complied with applicable safety regulations is relevant to show due care, it is not dispositive.

B. *Defendants' Breach of Duty Remains a Triable Issue of Fact.*

Defendants contend their experts' testimony negated any breach of duty on the part of defendants because the testimony showed the window was reasonably situated and maintained and there were no reasonable precautions defendants could have taken to prevent Carl from falling out of it. Carl's expert, defendants maintain, offered no evidence to the contrary. Our review of the expert testimony, however, leads us to conclude the defense experts did not completely exonerate defendants from liability and the plaintiff's expert testimony raised triable issues of fact as to whether defendants met their duty of care to Carl.

1. *Was the window reasonably situated?*

Defendant's expert, Wolfe, testified at his deposition: "From a safety point of view, I don't see any problem with the sill height of 28 inches

. . . ." It is clear, however, Wolfe's attitude toward the safety of the sill height was solely the result of his conclusion the height of the sill did not violate any applicable code provision. As we explained above, the fact the placement of the window did not violate any government regulation is not determinative of whether defendants exercised the degree of care required under the circumstances.

The record does not show Wolfe considered whether the placement of a low window in a common hallway where children Carl's age could be expected to go was consistent with defendants' duty of due care. Surely anyone familiar with young children, especially two-year-olds, is aware of their propensity to climb and can appreciate the allurement of an open window to a toddler. Wolfe and defendants' other expert, Nelson, testified the primary purpose of the window in the hallway was to provide light and ventilation. A secondary purpose was to provide access to firefighters and egress to tenants in the case of a fire. Neither expert explained why these purposes could not be accomplished by a window which was sufficiently high above the floor that a young child could not climb out.

Defendants object to our considering the height of the window in analyzing the breach of duty issue because, they claim, neither Carl nor his expert, Frechtel, mentioned the sill height during discovery or in opposition to defendants' motions for summary judgment. On the contrary, Frechtel testified if the window had a properly installed insect screen it would have been "safe," thereby implying that in his opinion defendants' only breach of duty was failure to maintain an insect screen on the window.

Defendants' objection is not well taken. On a motion for summary judgment the burden is on defendants to negate the element of breach of duty, not on Carl to establish it. In any event, the record shows Carl did question defendants' expert, Wolfe, about the safety of the sill height and did raise the sill height issue in his opposition to defendants' motion for reconsideration. As to Frechtel's statement a screen on the window would have rendered it "safe," we interpret this to mean "safe" from the standpoint of applicable building and safety codes, the only subject on which Frechtel was engaged to render an opinion.

### 2. *Was the window reasonably maintained?*

The undisputed evidence shows at the time of the accident the insect screen was missing from the window and the window was always open. The experts and the parties have spent considerable time discussing and debating the significance of these two facts. In our view the only fact of significance

is that it was the custom and practice of defendants to leave the second story window open.

All of the experts agreed the missing insect screen was not a significant factor in assessing defendants' liability for the simple reason an insect screen is designed to keep insects out, not people in. Even a child as young as Carl would have sufficient strength to push out an insect screen.

The open window presented an entirely different situation. Both defense experts agreed that maintaining the window closed and locked would have prevented the accident. Nelson testified Carl would not have fallen out the window if the window "was closed and was not easily openable by the child." Wolfe was asked at his deposition whether closing and locking the window would have prevented this accident. He answered: "If it were locked and if there was glass in the window, it's more likely than not that the child would not have penetrated through the glass. He could have, but probably not." Later in his deposition Wolfe expanded on this answer explaining: "Assuming the child isn't old enough to figure out how to unlock it, then the only alternative is for the child to break the glass. So there would be at least some type of barrier there under that screnario." In his declaration in opposition to summary judgment, plaintiff's expert, Frechtel, expressed the view defendants "could simply have kept the window closed and/or locked. This would have easily prevented a two year old from falling through the window."

### 3. *Did defendants fail to take reasonable precautions to avoid the accident?*

Another subject of discussion and debate between the experts and the parties is whether it would have been reasonable to place bars or some other form of guard over the hallway window in order to prevent the kind of accident which occurred in this case. Defendants maintain placing bars or other guards on the window would have been unreasonable because doing so would pose an even greater hazard in case of fire. Defendants' experts, however, were not as categorical in their opinions.

Wolfe testified at his deposition that although security bars of some kind might have prevented Carl from climbing through the window they would have increased the danger to the tenants in the case of fire. He reasoned: "[T]his is the single egress from the second floor after the stairways. That would be the escape route if the stairways are blocked. So if the fire people have to get into that hallway from the outside, they will not be able to do it with the security bars in place. So that would probably be the last window

that I would put security bars [*sic*]. In fact, I would not put security bars on that window, period."

In contrast, defendant's other expert, Nelson, testified that although the second story hallway window could be used by the tenants as an exit in case of fire, "this window is not a required exit under the code." He explained: "It's definitely an exitway. It is considerable distance from any exit travel, however. . . . So it's not really part of the exitway." Nelson further testified barring this window would not violate the fire code if the bars were removable from the inside to permit escape and the fire department had other means of access to the second floor in order to fight the fire and perform rescues. In this building firefighters would have access to the second floor from the interior stairway or, if it were blocked by fire, through any of the windows in the six second floor apartments.

Plaintiff's expert, Frechtel, took the position it would have been reasonable to install security bars which were removable from the inside in case of fire but, leaving the issue of bars aside, defendants "could simply have kept the window closed and/or locked." This would have been the most "simple and inexpensive [method] the defendants could have used to prevent falls."

In conclusion, we emphasize neither of defendants' experts discussed what would seem to be the least expensive and most effective remedy—raising the height of the window so a young child such as Carl could not crawl out. If the window were raised it would still provide light and ventilation and an exit in case of emergency but it would not be in a position where a toddler might accidentally fall through it.

The reasonableness of a landlord's conduct under all the circumstances is for the jury. (*Roberts* v. *Del Monte Properties Co., supra,* 111 Cal.App.2d at p. 74.) A triable issue of fact exists as to whether the defendants' maintenance of a low, open, unguarded window in a common hallway where they knew young children were likely to play constituted a breach of their duty to take reasonable precautions to prevent children falling out of the window.

III. *Pineda v. Ennabe Is Not Controlling.*

Seizing on our opinion in *Pineda* v. *Ennabe,* defendants contend they owed no duty to assure that children do not fall out of second story windows. If by "assure" defendants mean they are not insurers of the safety of their tenants, they are correct. (61 Cal.App.4th at p. 1409; *Schlemmer* v. *Stokes, supra,* 47 Cal.App.2d at p. 167.) However, neither *Pineda, Schlemmer,* nor any other case we have found contradicts the fundamental principle that a

landlord has a duty to take reasonable precautions to prevent young children such as Carl from suffering injuries in the common areas of their apartment building. (See discussion, *ante*, at pp. 898-903.) As we explained in *Pineda*, our intent in that case was to avoid imposing "some *new* duty of care . . . to prevent children from falling out [windows]." (61 Cal.App.4th at p. 1408, italics added.)

*Pineda* involved a five-and-a-half-year-old child who fell out the second story window of her own apartment, knocking out the screen as she fell. The undisputed evidence showed the lower edge of the window from which the plaintiff fell was 44 inches from the floor. The plaintiff's mother had placed a bed, consisting of a mattress on a box spring, directly under the window. The plaintiff, playing without adult supervision, was bouncing on the bed. She knocked the window screen out or aside and fell 30 feet to the ground. The plaintiff sued the landlord for negligence claiming the landlord should have placed a warning label on or near the window advising tenants the screen would not keep a person from falling out.

We concluded the landlord "owed no duty of care to prevent the kind of accident which occurred here." (*Pineda* v. *Ennabe, supra,* 61 Cal.App.4th at p. 1408.) We based this conclusion primarily on the ground the accident was not the foreseeable result of failing to put warning labels on windows. Rather, we explained: "The undisputed facts here showed that the predominant cause of plaintiff's accident was the careless parental placement of a bed under the window, followed by parental negligence in leaving the five-and-a-half-year-old plaintiff unattended and unsupervised. [¶] . . . There was little likelihood that respondent's failure to place warning labels or latches on the window screens would cause an accident of the kind which occurred here, unless the parent was negligent. The degree of certainty that an injury would occur was small, and the connection between the landlord's conduct and any such injury was slight. . . . [¶] The policy of preventing future harm would not likely be significantly advanced by imposing a duty here. A parent oblivious to the obvious danger posed by an unsupervised child near an open upper story window would likely be equally oblivious to the warning." (*Ibid.*)

*Pineda* broke no new ground in the analysis of a landlord's duty or breach of duty to a tenant. ▪ It is well established that while the negligence of a parent is not imputable to the child in an action by the latter for injuries, such negligence may nevertheless be relevant in determining whether a third person is liable for such injuries. (*Akins* v. *County of Sonoma* (1967) 67 Cal.2d 185, 198 [60 Cal.Rptr. 499, 430 P.2d 57].) As our Supreme Court stated in *Akins*: "[A] person does not act negligently if he cannot be expected

to reasonably foresee the existence of an unreasonable risk of harm to another through the intervention of negligence of a third person." (*Ibid.*) In *Pineda*, we held the landlord could not be expected to reasonably foresee the parent of a five-year-old child would put what amounted to a trampoline in front of a second story apartment window and allow the child to bounce on it unsupervised.[3] In addition, our opinion was consistent with numerous cases which have held when a child falls out of an apartment window the presence or absence of an insect screen on the window is irrelevant in determining a landlord's negligence because the purpose of an insect screen is to keep insects out, not people in. (E.g., *Schlemmer* v. *Stokes, supra,* 47 Cal.App.2d at p. 167; *Gustin* v. *Williams* (1967) 255 Cal.App.2d Supp. 929, 932-933 [62 Cal.Rptr. 838].)

The present case is distinguishable from *Pineda* in several ways.

Here, it was reasonably foreseeable a toddler would get up from watching television in the living room, open the apartment door, wander out into the hall, be attracted by an open window and fall out. This is not the kind of case in which negligent supervision, if any, affected the landlord's duty of care. (Cf. *Akins* v. *County of Sonoma, supra,* 67 Cal.2d at p. 198; *Pineda* v. *Ennabe, supra,* 61 Cal.App.4th at p. 1408.) The distinction between the present case and *Pineda* in terms of foreseeability is similar to the distinction between the *Brady* case, *ante,* and another case from Louisiana, *Yates* v. *Tessier* (1926) 5 La.App. 214. In *Brady,* it will be recalled, a young child fell out of an apartment window his mother had left open because it was July and the landlord had not repaired the air conditioning. (424 So.2d at p. 1105.) On the issue of duty the court held the window, which was only inches off the floor, created an unreasonable risk of harm to children and that it was reasonably foreseeable a child would enter the window opening. (*Id.* at p. 1106.) The court distinguished this case from an earlier Louisiana case, *Yates,* in which the parents placed a bed even with an "ordinary window" which they knew was hinged at the top and unfastened at the bottom. The parents then placed the child on the bed from which he fell out the window. The *Brady* court concluded: "Given the facts in *Yates* . . . it cannot be said that the landlord should have reasonably foreseen the accident." (424 So. 2d at p. 1107.)

Another distinguishing feature is that liability in the present case is not based on the presence or absence of a screen on the hallway window. Even

---

[3]Indeed, the parent's negligence in *Pineda* was on a par with the negligence of the landlord in *Roberts* v. *Del Monte Properties Co., supra,* 111 Cal.App.2d at page 72, who left a mountain of furniture and mattresses in front of an open window where he knew children in the building would play.

Carl's own expert testified a screen on the hallway window would not have prevented this accident.

Liability in *Pineda* was not premised on the height of the window sill above the floor. In *Pineda* the evidence showed the window sill in plaintiff's apartment was 44 inches above the floor. (61 Cal.App.4th at p. 1405.) In contrast, the window sill at issue in the present case was only 28 inches above the floor. As we have previously discussed, the utility of maintaining such a low window for the purposes of providing light, ventilation and emergency access would appear to be outweighed by the danger such a window poses to young children such as Carl.

Finally, our opinion in *Pineda* does not preclude Carl from presenting evidence of the reasonableness of placing some kind of protective device on the hallway window. In *Pineda* we observed placing bars on the windows might reduce the risk of a child falling out but could pose a new risk of trapping tenants during a fire. (61 Cal.App.4th at p. 1408.) This was merely dictum—a general observation not based on any specific evidence in the record. In contrast, the record in the present case includes testimony from one of defendants' experts who conceded barring the hallway window would not violate the fire code if the bars were removable from the inside to permit escape and the fire department had other means of access to the second floor such as the interior stairway or through the tenants' apartment windows.

For the reasons explained above, we conclude our decision in *Pineda* is not controlling here and does not support summary judgment for the defendants in this case.

## DISPOSITION

The judgment is reversed. Appellant is awarded costs on appeal.

Lillie, P. J., and Woods, J., concurred.

A petition for a rehearing was denied August 17, 1999, and respondents' petition for review by the Supreme Court was denied October 27, 1999.