Filed 4/1/15  Reyes v. Group X Rosemead Properties CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| FERNANDO HURTADO REYES,<br><br>          Plaintiff and Appellant,<br><br>    v.<br><br>GROUP X ROSEMEAD PROPERTIES, LP, et al.,<br><br>          Defendants and Respondents. | B253700<br><br>(Los Angeles County<br> Super. Ct. No. VC059313) |

APPEAL from the judgment of the Superior Court of Los Angeles County. Philip H. Hickok, Judge.  Affirmed.

Perez & Caballero, Frank Perez, Miguel G. Caballero, and Armando Solorzano for Plaintiff and Appellant.

Hahn Bistline & Associates and Gregory D. Bistline for Defendants and Respondents.

\* \* \* \* \* \* \* \* \* \*

In this personal injury lawsuit, plaintiff Fernando Hurtado Reyes appeals from the grant of summary judgment in favor of defendants Group X Rosemead Properties, LP, and Group X Rosemead Properties, Inc. Plaintiff fell over a second story balcony railing at his apartment complex. Defendants owned the building. Plaintiff's lawsuit alleged the railing was dangerous because it was 35-1/2 inches high and the applicable Uniform Building Code required a minimum height of 36 inches. We affirm the judgment, finding plaintiff did not show there was a triable issue of fact that defendants breached any duty of care or that the guardrail was defective.

## FACTS

As an initial matter, we note that the appellate record is incomplete. Plaintiff elected to proceed with a clerk's transcript. In designating the record, plaintiff did not separately list the declarations of Gregory D. Bistline, Chuck Daleo or Everet Miller in support of defendants' motion for summary judgment, so the record before us does not include defendants' evidence. The only evidence in the clerk's transcript is a portion of plaintiff's deposition testimony and the declaration of plaintiff's expert, Mark Burns, a safety engineer. Generally, such an inadequate record would bar appellate review. (See, e.g., *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574-575.) We are not prevented from deciding the appeal on the merits, however, because the parties' statements of undisputed facts demonstrate the condition of the balcony railing and the circumstances of plaintiff's fall are not in dispute.

## A. The Undisputed Facts

These are the undisputed facts: Plaintiff was a longtime tenant of the apartment building. Defendants acquired the apartment building in 2006 and owed a duty to plaintiff to remedy any building code citations.

On June 19, 2010, plaintiff was impaired by alcohol. He had consumed six or eight 12-ounce cans of beer that day. He went to another apartment in the complex, apartment 20, to buy more "intoxicants" and got in an altercation with the occupants of that unit. He either fell or was pushed by one or more of the people in apartment 20 over a second story balcony railing. Plaintiff does not remember falling or how he happened

to fall over the railing. Defendants had no knowledge of the violent tendencies of the occupants of apartment 20.

(In the operative complaint, plaintiff alleged defendants knew the occupants of apartment 20 "were on parole, were criminals, were frequently visited by criminals, sold drugs, sold guns, got into fights, [and] possessed weapons." After defendants moved for summary judgment, plaintiff conceded he had no basis to oppose judgment for defendants on these allegations.)

The apartment building was constructed in 1962. At that time, the California Uniform Building Code required balcony railings to be at least 36 inches in height. The railing is 35-1/2 inches in height. The apartment building was inspected and a permit was issued at the time it was built.

In 1970, the Uniform Building Code changed, requiring railings to be at least 42 inches in height. An owner is required to bring the building up to current Uniform Building Code requirements when there is new construction or substantial remodeling. The City of Pico Rivera Building Department records do not indicate there was any new construction or substantial remodeling from the time the apartment building was constructed until the date of plaintiff's fall. The building continued to pass multiple inspections and the owner was never cited for a code violation.

During the time defendants owned the building, there had been no previous falls over any balcony or railing.

**B.      Plaintiff's Expert Declaration**

The trial court sustained defendants' objections to parts of the Burns declaration, which plaintiff claims as error on appeal, and which we address further in the discussion below. The pertinent parts of the Burns declaration to which there was no objection established the following:

The apartment building was originally constructed pursuant to a permit issued on December 29, 1961. No subsequent permits were issued relating to guardrails at the property. The 1961 Uniform Building Code would have been in effect at the time of the original construction and therefore the apartment building must comply with those

3

requirements. The applicable section of the 1961 Uniform Building Code required railings for balconies, landings or porches be not less than 36 inches in height above the floor. Photographs depicting measurements of the guardrail height indicate that the guardrail had a height of 35-1/2 inches in the area where the subject incident occurred. The purpose of the Uniform Building Code is to provide the minimum standards "to safeguard life or limb, health, property, and public welfare."

In 1970, the Uniform Building Code was modified to require all new construction and buildings with substantial remodeling to install guardrails at the height of 42 inches as a safety precaution given the substantial magnitude of harm associated with any fall from height. While apartments built before 1970 were not required by the Uniform Building Code to replace their railings, the 1970 Uniform Building Code change signaled a new minimum standard for guardrail safety. Mr. Burns's review of the building permit records on file with the City of Pico Rivera indicated that construction work was performed on stairways and guardrails at the apartment building in 1991, although he could not find any detail as to the work that was actually performed.

## DISCUSSION

### A.     Standard of review

Our Supreme Court has said that the purpose of the 1992 and 1993 amendments to the summary judgment statute was "to liberalize the granting of motions for summary judgment." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 854 (*Aguilar*).) "It is no longer called a 'disfavored remedy.' It has been described as having a salutary effect, ridding the system, on an expeditious and efficient basis, of cases lacking any merit." (*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 248 (*Nazir*).) On appeal, "we take the facts from the record that was before the trial court . . . . [Citation.] ' "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." ' [Citation.]" (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.)

4

**B.    Evidence in support of and in opposition to a summary judgment motion must be admissible, just like at trial.**

The same rules of evidence that apply at trial also apply to the declarations submitted in support of and in opposition to motions for summary judgment. Declarations must show the declarant's personal knowledge and competency to testify, state facts and not just conclusions, and not include inadmissible hearsay or opinion. (Code Civ. Proc., § 437c, subd. (d); *DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 681-681 (*DiCola*) [affirming summary judgment where trial court properly sustained hearsay objections].)  The declarations in support of a motion for summary judgment should be strictly construed, while the opposing declarations should be liberally construed.  (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107, superseded by statute as stated in *Aguilar*, *supra*, 25 Cal.4th at p. 854, fn. 19.)  This does not mean that courts may relax the rules of evidence in determining the admissibility of an opposing declaration.  Only *admissible evidence* is liberally construed in deciding whether there is a triable issue.

**C.    The court did not err in ruling on defendants' objections to the Burns declaration.**

We review the trial court's rulings on evidentiary objections for an abuse of discretion.  (*DiCola*, *supra*, 158 Cal.App.4th at p. 679.)

Plaintiff argues the trial court "summarily" sustained defendants' objections to the Burns declaration, thereby preventing a meaningful basis for appellate review, citing *Nazir*, *supra*, 178 Cal.App.4th at page 257.  *Nazir* provides no support for plaintiff.  In *Nazir*, the defendant submitted 764 objections to plaintiff's evidence, set forth in 324 pages.  (*Id.* at p. 249.)  The only indication of the trial court's analysis and ruling on the objections in *Nazir* was the order granting the defendant's motion after the matter was submitted for decision, in which the court overruled *one* objection and sustained the remaining *763* objections.  (*Id.* at p. 250.)  *Nazir* agreed with the plaintiff that the blanket ruling sustaining all (but one) objections was error.  (*Ibid*.)

In contrast, the record here demonstrates the trial court took great care in considering and ruling on defendants' objections to the nine-paragraph Burns declaration.

5

Defendants separately stated and cited authorities for their objections to parts of paragraphs 4 through 9. The clerk's transcript includes the court's notations on defendants' objections to the Burns declaration, indicating the statements to which objections were sustained and the legal basis for the ruling. It is apparent that, in so ruling, the court examined the Burns declaration alongside defendants' objections, because the clerk's transcript also includes a copy of the court's marked-up original Burns declaration. The court bracketed each sentence or paragraph to which the court sustained defendants' objections and interlineated the legal bases for the court's rulings. In sum, the trial court conscientiously undertook to consider and rule on defendants' objections, one by one.

Turning to the substance of the trial court's rulings, we find plaintiff has not demonstrated an abuse of discretion. The portions of the Burns declaration that were stricken by the trial court dealt mostly with causation, that is, whether the height of the railing caused plaintiff's fall. The elements of a negligence cause of action are " ' "(a) legal duty to use due care; (b) a *breach* of such legal duty; [and] (c) the breach as the *proximate or legal cause* of the resulting injury." ' [Citation.]" (*Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917.) Defendants' motion did not put causation in issue. Defendants sought summary judgment on the ground they did not breach the duty owed to plaintiff because the departure from the Uniform Building Code's minimum height requirements for the railing was trivial as a matter of law. Thus, the court did not abuse its discretion in finding Mr. Burns's opinions as to causation were irrelevant to the issues of duty and breach of duty.

We also find no abuse of discretion by the court in sustaining objections to parts of the Burns declaration on the additional grounds of lack of foundation and speculation. In paragraph 5, Mr. Burns stated that he calculated plaintiff's center of gravity based on his height ("including shoes"), weight and "body type" to be 35-5/8 inches. He opined that if the railing had been 1/8 inch higher, "he most likely would have bounced back and not fallen over." Mr. Burns did not testify to the basis for his personal knowledge of plaintiff's height, weight, body mass or shoe height, or his education and experience in

6

calculating a person's center of gravity. He did not attest to any expertise in biomechanics. He said nothing about whether the probability of falling over the railing might differ if a person merely tripped, as opposed to being pushed in a violent altercation. In fact, he offered no explanation at all for his opinion. An opinion is only as good as the facts and reasons on which it is based. (*Kelley v. Trunk* (1998) 66 Cal.App.4th 519, 523; *Pacific Gas & Electric Co. v. Zuckerman* (1987) 189 Cal.App.3d 1113, 1135 ["The value of opinion evidence rests not in the conclusion reached but in the factors considered and the reasoning employed"].)

The trial court also properly excluded as speculative and without foundation Mr. Burns's opinion that "it would be mandatory for any licensed contractor, engineer or architect to advise a landowner that guardrails lower than 42 inches posed a serious risk of injury or death to tenants or their guests." Mr. Burns previously had declared an owner is required to bring a building up to current Uniform Building Code requirements only when there is new construction or substantial remodeling. He offered no basis for his opinion that a contractor, engineer or architect is mandated to advise a landowner to comply with the current code, nor did he state he had any reason to believe that defendants actually had consulted any contractor, engineer or architect. To the contrary, Mr. Burns stated it appeared no permit had been sought for the building since its construction in 1962, except in 1991, long before defendants acquired the building, and he stated he did *not* know what work was performed then. "An expert's speculations do not rise to the status of contradictory evidence, and a court is not bound by expert opinion that is speculative or conjectural. [Citations.] [Parties] cannot manufacture a triable issue of fact through use of an expert opinion with self-serving conclusions devoid of any basis, explanation, or reasoning." (*McGonnell v. Kaiser Gypsum Co.* (2002) 98 Cal.App.4th 1098, 1106.)

The trial court also properly excluded Mr. Burns's opinion that an inspection by defendants or city inspectors "should have revealed the code violation of the guardrails and further the need to update them to the 42 inch standard." The court sustained defendants' objections that this opinion was speculative and an inadmissible legal

7

conclusion. Mr. Burns did not offer any basis for his speculation that an inspection of the guardrails should have revealed a one-half inch height disparity. His legal opinion that there was a need to update the railing to the 42-inch standard is inadmissible, and is incorrect, since it was undisputed that apartments built before 1970 were not required by the Uniform Building Code to adhere to the new 42-inch height requirement.

Finally, the court properly sustained defendants' objections to Mr. Burns's opinion about the cost to remove and replace the guardrails on the grounds it was irrelevant, speculative and without any foundation.

## D. Defendants did not breach their duty of care to keep the premises in a reasonably safe condition.

"Since *Rowland v. Christian* (1968) 69 Cal.2d 108, the liability of landowners for injuries to people on their property has been governed by general negligence principles." (*Pineda v. Ennabe* (1998) 61 Cal.App.4th 1403, 1407.) "Premises liability is a form of negligence based on the holding in *Rowland v. Christian*, *supra*, 69 Cal.2d 108, and is described as follows: The owner of premises is under a duty to exercise ordinary care in the management of such premises in order to avoid exposing persons to an unreasonable risk of harm. A failure to fulfill this duty is negligence." (*Brooks v. Eugene Burger Management Corp.* (1989) 215 Cal.App.3d 1611, 1619.)

Unquestionably, defendants owed plaintiff a duty to maintain the apartment building in a reasonably safe condition. The question here is whether there is a material factual dispute that defendants breached their duty of care by failing to raise the height of the railing by at least one-half inch.

### 1. No dispute as to negligence per se

Plaintiff contends he is entitled to a presumption that defendants were negligent because defendants violated the 1961 Uniform Building Code. Plaintiff argues the jury should decide whether defendants breached their duty of care by failing to raise the height of the railing by at least one-half inch to comply with the applicable code, or by four and one-half inches to comply with current code requirements. We disagree that, on

8

this record, plaintiff demonstrated a material dispute that defendants were negligent per se.

"Negligence will not be presumed from violation of the building code unless the 'injury' suffered 'resulted from an occurrence of the nature which the [Uniform Building Code] was designed to prevent.' It is a question of law whether the injury suffered by [the plaintiff] was one which the building code was designed to prevent." (*Morris v. Horton* (1994) 22 Cal.App.4th 968, 972.) Obviously, the Uniform Building Code minimum requirement for a railing is meant to protect tenants of an apartment building and others from falling from a height. But the only inference that may be reasonably drawn from the evidence in this case is that one or more occupants of apartment 20 violently pushed plaintiff over the railing. The Uniform Building Code was designed to prevent a tenant or guest from falling over the railing, including intoxicated tenants and guests, but the Uniform Building Code was not designed to protect against an assault with such great a force as to propel someone over the railing.

### 2. No dispute as to common law negligence

Defendants contend they had no duty to raise the railing to comply with current code requirements, and the railing substantially complied with the applicable code inasmuch as the one-half inch deviation was minor, trivial or insignificant. Defendants cite the well-established principle that a property owner is not liable for damages caused by a minor defect in property. (*Whiting v. City of National City* (1937) 9 Cal.2d 163, 166.) "Courts have referred to this simple principle as the 'trivial defect defense,' although it is not an affirmative defense but rather an aspect of duty that plaintiff must plead and prove. . . . [Citation.] . . . [Citation.] The question . . . is not whether [defendant] established a complete defense, but whether plaintiffs showed there is a triable issue as to whether there was a dangerous condition . . . that [defendant] had a duty to repair." (*Caloroso v. Hathaway* (2004) 122 Cal.App.4th 922, 927.)

Plaintiff counters that the trivial defect doctrine does not apply to this case. Plaintiff argues the doctrine only applies to defects in walkways or sidewalks and cannot be extended to guardrails because injuries from a street level trip and fall are much less

9

serious than injuries from a fall from a raised balcony. Plaintiff cites no authority for his argument the doctrine applies only to walkways or sidewalks, or for the notion that as a matter of law, injuries from a trip and fall are less severe than injuries from a fall over a guardrail. We are not persuaded by plaintiff's bare, factually and legally unsupported argument.

Moreover, plaintiff's argument was rejected long ago by the court in *Graves v. Roman* (1952) 113 Cal.App.2d 584, which held the private owner of an office building was not liable for "severe injuries" suffered in a trip and fall. In that case, plaintiff tried to "distinguish . . . 'trivial defect' authorities on the ground that they are all 'sidewalk' cases involving municipalities." (*Id.* at pp. 586-587.) The *Graves* court rejected that argument because "[t]he authorities disclose that the underlying basis of the decisions is a practical recognition of the impossibility of maintaining heavily travelled surfaces in a perfect condition and that minor defects such as differences in elevation are bound to occur in spite of the exercise of reasonable care by the party having the duty of maintaining the area involved." (*Ibid.*)

Plaintiff is correct that, "[t]he trivial defect doctrine originated to shield public entities from liability where conditions on public property create a risk 'of such a minor, trivial or insignificant nature in view of the surrounding circumstances . . . no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used.' " (*Kasparian v. AvalonBay Communities, Inc.* (2007) 156 Cal.App.4th 11, 27.) Plaintiff is also correct that many of the cases applying the doctrine have arisen in the context of a slip and fall or trip and fall.

But no case expressly or impliedly limits the doctrine to sidewalk trip and fall accidents. From the Supreme Court's first consideration of the question of duty to repair a minor defect in the 1937 opinion in *Whiting v. City of National City*, *supra*, through the subsequent opinions applying the trivial defect doctrine, the courts have applied traditional negligence analyses. The doctrine has been applied to claims of defective design of a stairway and handrail (*Davis v. City of Pasadena* (1996) 42 Cal.App.4th 701,

10

705), a city intersection (*Antenor v. City of Los Angeles* (1985) 174 Cal.App.3d 477, 481-485), and a schoolground game with a rope and skateboard (*Bartell v. Palos Verdes Peninsual School District* (1978) 83 Cal.App.3d 492, 496-498).  The trivial defect doctrine is an aspect of the law of premises liability that developed to place limits so as to avoid exposing landowners to "what amounts to absolute liability for injury to persons who come upon the property."  (See *Ursino v. Big Boy Restaurants* (1987) 192 Cal.App.3d 394, 399, and cases cited therein.)

Plaintiff's case rests entirely on the fact the railing was one-half inch shorter than the applicable Uniform Building Code required.  Plaintiff reminds us that compliance with safety regulations, such as the Uniform Building Code, does not prove due care as a matter of law, since the code sets a minimum safety standard and circumstances may require the landowner to take extra precautions.  (See *Amos v. Alpha Property Management* (1999) 73 Cal.App.4th 895, 901.)  Plaintiff argues this necessarily means defendants cannot show they discharged their duty of care by demonstrating the railing *substantially* complied with the Uniform Building Code.  We agree with plaintiff that neither compliance (nor substantial compliance) with the Uniform Building Code establishes ordinary care as a matter of law.  "[C]ompliance with applicable safety regulations is relevant to show due care, [but] it is not dispositive."  (*Amos*, *supra*, at p. 901.)

Thus, we consider whether the one-half inch deviation from the Uniform Building Code and all the other circumstances of plaintiff's fall indicate there is a material dispute whether defendants were negligent in maintaining the railing.  The question whether a condition of property is dangerous must be examined in light of *all* the circumstances surrounding it.  (*Fouch v. Werner* (1929) 99 Cal.App. 557, 564 [" '[Negligence] is not absolute or to be measured in all cases in accordance with some precise standard but always relates to some circumstance of time, place and person.' "]; *Fielder v. City of Glendale* (1977) 71 Cal.App.3d 719, 731 ["[W]e must view the 'defect' in light of all the circumstances surrounding it."].)

11

Plaintiff was a longtime tenant of the apartment building, which defendants acquired in 2006. The apartment building at all times was permitted for occupancy. There had been periodic inspections and there was no evidence of any citation for any code violation. There is no evidence that anyone had ever previously fallen over the railing. There is no evidence the railing was rusted, broken, missing iron rods, had gaping holes, or otherwise presented an obvious safety risk. There is no evidence defendants had actual notice of the one-half inch variation from applicable Uniform Building Code requirements or that, in the exercise of due care, defendants should have discovered the one-half inch disparity and repaired it.

The undisputed facts in this case are not analogous to the facts in *McNally v. Ward* (1961) 192 Cal.App.2d 871, on which plaintiff relies. In *McNally*, plaintiff fell against a wooden railing, which had fallen into obvious disrepair, and broke when plaintiff fell against it. (*Id*. at p. 873.) In this case, there is no evidence of any defect in the construction of the guardrail or of disrepair due to inadequate maintenance.

On the other hand, plaintiff was impaired by having consumed six or eight 12-ounce cans of beer. He went to apartment 20 to buy more "intoxicants" and got in an altercation with the occupants of that unit. Plaintiff does not remember anything about his fall over the railing or how he fell. The only reasonable inference from the undisputed evidence is that one or more occupants of apartment 20 pushed him over the railing. Defendants had no knowledge of the violent tendencies of the occupants of apartment 20. There is simply no disputed fact in this record to suggest defendants should have foreseen the circumstances of plaintiff's fall.

## DISPOSITION

The judgment is affirmed. Respondents are to recover their costs on appeal.


GRIMES, J.

WE CONCUR:

BIGELOW, P. J.          RUBIN, J.

12