[Civ. No. 14869. First Dist., Div. Two. May 12, 1952.]

JOHN ROBERTS, a Minor, etc., Respondent, v. DEL MONTE PROPERTIES COMPANY, INC. (a Corporation), Appellant.

Dana, Bledsoe & Smith for Appellant.

Joseph L. Alioto and Robert J. Drewes for Respondent.

NOURSE, P. J.—This is an appeal by the defendant in a negligence action held responsible for the injuries suffered by the minor plaintiff, who fell through a window when playing on a pile of furniture and mattresses left near it.

Defendant corporation had for many years been owner and operator of the Del Monte Hotel at Monterey, California, which hotel since the end of 1942 had been used by the United States Navy for some of its schools, the defendant remaining owner and operating and maintaining the properties for the government. On June 15, 1948, the government purchased the properties, but, pending the organization of a staff of its own, continued to use the services of defendant, as an independent contractor, for the operation and maintenance of said properties on the basis of a written contract. Defendant was so operating and maintaining the properties when on June 27, 1948, the accident happened. Plaintiff, John Roberts (hereinafter called John) then 7 years old, was living in the west wing of the hotel building as a member of the family of his father, a Navy officer who was attending the school. The west wing was being used as quarters for officers with families. There were at least 50 children in the west wing divided over four floors. John's family lived on the second floor.

On June 27, 1948, a Sunday, John had played outside and then later in the afternoon rode up in the elevator together with his playmates Bobby Masonheimer and Danny Smith—also sons of officers living in the west wing—and Danny's father, Warrant Officer Smith. The Smith family was the only one that had quarters on the fifth floor and John often went there to play with Danny. They left the elevator at the fourth floor, the highest floor served by it, and there saw in the hall near the windows a pile of furniture and mattresses near which they had to pass to mount the stairway to the

fifth floor. Danny and his father continued up but John and Bobby remained behind to play on the pile. John testified that one of the mattresses was lying on the furniture slanted in such a way that the boys could slide down in the direction of the stairs, one was on the floor on which they could jump and the top one slanted partly down in the direction of the window. When during the playing John was on the top mattress he accidentally tumbled backward towards the open window behind the pile, the screen in it gave way, and boy and screen fell down into a patio. John was seriously injured. There was evidence that the screen was in a weakened and defective condition, but on appeal no negligence is predicated on this condition independent from the fact that the pile of furniture and mattresses, attractive to children, was near the unprotected, open window.

■ Appellant contends in the first place that it could not be held liable on the theory that it placed in a hall where children invitees were known to pass a pile of furniture attractive to children in a location which would be dangerous if they played there, because there was no evidence that any of its employees or agents placed it in that manner. To the contrary, the janitor Marie, the only one who gave evidence concerning the furniture as it was prior to the time John saw it, testified that on the preceding Saturday afternoon on which he worked until 4:30 he found in the hall of the fourth floor two iron bedsteads taken apart with two springs and two mattresses. He put the bedsteads in the storeroom on that floor but, as there was no room for the mattresses and springs, he put them nearby leaning against the wall. He did not put anything else near the window. When he came there again on Wednesday (after the accident) there was more furniture and it was not placed in the same way. He often found furniture of the hotel in the halls because Navy families put it out of their rooms when they brought in furniture of their own. The storerooms were full. The pile remained in the hall until Wednesday when room for it was made in the storeroom. However it was shown that at a prior trial of the case the witness, over and above testimony to the same effect as that at the present trial, had also testified on cross-examination: "Q. Isn't it true, Mr. Marie, that on Saturday, the 26th of June, 1948, you were moving furniture from the officers' rooms to the storeroom, in room A? A. Yes. Q. Isn't it true you piled the furniture between the window and the storeroom as shown in Plaintiff's Exhibit 3-A.

A. Yes.'' The witness contended at the trial that he had misunderstood the question and that the answers were not right. He was further impeached by testimony of Lieutenant Owen Roberts, father of plaintiff, to the effect that when in his presence the attorney of his son discussed the circumstances of the accident with Marie in July, 1948, Marie stated that he had placed the furniture between the storeroom and the window on the day preceding the accident without making any qualification and further that he frequently put furniture there, until he could put it in the storeroom. Under those circumstances the jury could disbelieve Marie's main testimony and taking into consideration that the moving of furniture belonged to Marie's task as a janitor, that the furniture was piled up near the storeroom where such furniture was normally stored by defendant, and that Marie finally removed it after the accident, it could infer that Marie had placed it there.

Appellant further argues that a motion for a directed verdict made by it should have been granted because plaintiff when playing on the pile of furniture was using it for an unintended and unpermitted purpose and therefore became a trespasser or licensee to whom defendant owed no duty except to refrain from overt or intentional acts not here involved.

This rule has expressly been held inapplicable to infant invitees attracted by dangerous objects in *Crane* v. *Smith,* 23 Cal.2d 288, 300 [144 P.2d 356]. In that case our Supreme Court affirmed the award of damages to a 3-year-old child for injuries received when she placed her finger in a coffee grinder in a market where her mother was purchasing groceries. The court said: ''The rule relied upon by the appellant, however, has no application to the fact of this case. At the time of the injury, the coffee mill was on an aisle in a portion of the store open to business visitors. To say that a three-year-old girl accompanying her mother was such a visitor as she stood in front of the machine but a trespasser when she followed a childish impulse to put her hand on or in the fascinating red contrivance which made such interesting sounds would be to extend the doctrine of the cases denying compensation to one who has exceeded the scope of his invitation beyond their logical scope. Moreover, such reasoning would nullify the land occupier's duty to keep his premises free of natural or artificial conditions which involve an unreasonable danger to his business visitors when he has

reason to believe that they will not realize the risk involved in the condition. Certainly, evidence shown by the present record justifies a finding that the child's act was one which a reasonably prudent person should have anticipated and guarded against." And further on page 301: "The childish propensity to intermeddle was the characteristic which the appellant should have taken reasonable precautions to guard against." To the same effect in *Kataoka* v. *May Dept. Stores Co.*, 60 Cal.App.2d 177 [140 P.2d 467], in which case it was held that an action of a four-year-old child, who accompanied his mother to a department store, for injuries received when he inserted his hand under the "combplate" of the store's escalator, should have gone to the jury. Appellant's contention that said two cases represent an exception to the general rule and are restricted in their application to situations involving dangerous machinery is without merit. Neither the language nor the rationale of said decisions presents any ground for such restriction. ■ They are based on the general principle that the person in possession of premises must take such precautions for the safety of his business invitees as are reasonable under all the circumstances, considering their relation, the burden of the interference with his own affairs and the danger to the invitees to be anticipated, and that special caution is required in behalf of invitees of immature age whose inability to appreciate and propensity to ignore certain dangers he ought to consider. In this respect it can make no difference in principle whether the owner of a shop or hotel places within the reach of his infant invitees attractive but dangerous machinery or attractive fruit, decorative but poisonous. ■ In each case the reasonableness of the conduct under all the circumstances is for the jury and accordingly it was also in this case correctly left to the jury. No contention is made that apart from the improper use of the furniture John was not a business invitee on the premises.

■■ The existence of an order of the Navy officers in charge of the school forbidding officers with dependents to allow their children to play in corridors should not prevent the matter from going to the jury. Not only was the order not directed to the children but to their parents, but even the violation of a statute by a child of that age does not constitute contributory negligence as a matter of law but the question whether the violation constitutes contributory negligence remains for the jury. (*Galbraith* v. *Thompson,* 108 Cal.App. 2d 617, 621 [239 P.2d 468].) As could be expected there was

evidence that children did play in halls and corridors. Neither was John's testimony that he knew that falling might hurt decisive against him. The essential inquiry was not that, but whether John was reasonably required to anticipate that if he played on the pile he might fall and be hurt and therefore to abstain from so playing.

Next appellant assigns as error that the court in instructions expounding the issues to be decided stated in effect that plaintiff was entitled to a verdict if he was not negligent and had not assumed the risk whereas defendant's negligence was the proximate cause of the injury without including the proviso that the jury must first find that plaintiff was still an invitee while playing on the furniture. Under our holding that appellant's theory that plaintiff lost his status of invitee by improper use of the pile of furniture was not applicable to a situation as presented in this case such proviso evidently was not required. As to appellant's duties with respect to an infant invitee the jury was correctly instructed.

Appellant contends that instructions to the effect that defendant corporation was the operating manager and its agent in charge of the properties involved in the accident and that it was subject to the same liability, and enjoyed the same immunity from liability for bodily harm caused thereby as though it were the owner of the land invaded the province of the jury by stating contested issues as established facts.

However if the evidence is clear, positive, uncontradicted and of such a nature that it cannot rationally be disbelieved the court must instruct that a fact so proved has been established as a matter of law. (Compare *Blank* v. *Coffin*, 20 Cal. 2d 457, 461 [126 P.2d 868].) In this case plaintiff introduced into evidence the contract in force between defendant and the government at the time of the accident. This contract, dated June 15, 1948, recited in part that up to June, 1948, appellant, in the contract called the "Contractor," had been owner and operator of the Del Monte Hotel which it *"had operated and maintained for the Government as a Naval Pre-Flight School"* according to a prior contract, that the government had purchased the properties for the purpose of establishing a Naval post graduate school and that "pending the recruiting and organization of a staff *for the operation and maintenance* of said properties, the Government is desirous of continuing to utilize the services of Contractor for such purposes." It is then agreed that for a sum of $30,000 a month "the Contractor will perform all janitorial services,

operate the powerhouse, make current repairs, and *perform all other services necessary to the operation and maintenance* of the Del Monte properties and grounds.'' (Italics ours.) Apart from possible other evidence which might cause a conflict this contract proves that at the time of the accident defendant was still operating and maintaining the premises for the government as a school in the same manner as it had done for several years up to June, 1948, when it was still owner. Defendant did not introduce any evidence that the Navy took over or controlled the janitorial service or management of the halls and corridors here involved. There was evidence that Navy officers regulated and controlled the use of rooms by the student officers and their families; they assigned quarters, gave keys; their permission was required for officers to move furniture or switch it from one room to another. If permission was given the handling was the task of defendant's janitorial service. Sometimes a room on the fifth floor was allotted by the Navy to a family as a private storeroom. The evidence of defendant's witnesses showed that the janitorial service in halls and corridors and the general storing was handled by defendant's employees and agents; although those most directly concerned testified as witnesses for defendant, there was no evidence whatever of any control of the Navy over these activities. The fact that the Navy among many other orders regulating conduct of student officers and their families made the one concerning letting children play in corridors, mentioned before, does not cause any conflict with regard to defendant's physical control of said corridors. Neither does the existence of a security patrol of civilian officers hired by the Navy have this effect as there was no evidence whatever that it was in any way concerned with physical conditions on the premises. Appellant points out that its employees were not present on Sundays. There is, however, no evidence that they were not allowed to work or inspect on Sundays. (We have held moreover that the jury could conclude from the evidence that an employee of defendant placed the pile in the hall on Saturday.) It may be that the statement in the instruction that the properties were in charge of an agent of defendant was somewhat general as the Navy which conducted a school on the premises must in that respect have had some control. However, as the uncontradicted evidence shows that all halls and furniture involved in the accident and all management and activity concerning them was in charge of defendant's agents, any possible error

as to the extent of appellant's management cannot have been prejudicial. It is not contested that one who carries on an activity on land on behalf of the owners in possession is subject to the same liability and enjoys the same immunity from liability, for bodily harm caused thereby to others as though he were said owner. (Rest., Torts, § 383.)

Appellant also attacks an instruction reading: "The contract operator of a dwelling owes a duty to keep his buildings and premises reasonably safe for his guests, and to exercise reasonable care to protect his guests from injury through his negligence. He has the duty of making careful and frequent inspections in an endeavor to discover any defective conditions that would cause injury to a guest." It is said that it is a question of fact for the jury whether ordinary care required inspection, and whether the duty of inspection if any rested on defendant or on the Navy. We have already decided this point partly against appellant in holding that appellant was responsible for the physical condition of the premises insofar as involved in this accident. However the instruction requiring frequent inspections is erroneous. █ What constitutes reasonable care under all the circumstances of a case is for the jury, if subject to reasonable doubt (*Polk* v. *City of Los Angeles,* 26 Cal.2d 519, 530 [159 P.2d 931]) and whether ordinary care requires frequent inspections of the halls of the living quarters of a school for furniture placed there by student officers and their families is subject to such doubt. Good instructions had been given as to the measure of care to which defendant was held in general and the specific instruction requested should have been refused as invading the province of the jury. █ However the error does not require reversal. Defendant could be held liable either on the theory that its janitor placed the pile of furniture there where the accident occurred in which case defendant was liable as his superior without any question of inspection being involved or on the theory that it was placed there by guests after the janitor left on Saturday afternoon, in which case the question of reasonable inspection might come up. However if the janitor's testimony is believed that the dangerous condition did not yet exist when he left late on Saturday afternoon, there is not the slightest evidence when between his leaving and the time that John started to play on the pile on Sunday afternoon guests might have constructed the pile, so that there could be no basis for holding that even frequent inspection, short of constant guarding, would have dis-

covered the pile in time to prevent the accident. It could therefore not be held that the lack of frequent inspection proximately caused the accident. The jury was clearly instructed that if they might find the defendant negligent they had still to determine whether that negligence contributed in any degree as a proximate cause of the accident, and that if they found that it did not they had to find for defendant. Although the jury could be induced by the erroneous instruction to hold that the admitted fact that defendant had not inspected the halls the last twenty-four hours before the accident constituted negligence as a matter of law, they could not hold under the correct instructions given as to proximate cause that such negligence proximately contributed to the causation of the accident. It will be presumed that the jury followed the court's instructions. (*Snodgrass* v. *Hand,* 220 Cal. 446, 448 [31 P.2d 198].) It must therefore be presumed that the jury did not hold defendant liable on the ground of negligence in inspection but on the ground of its responsibility for the negligent placing of the furniture by its janitor. "Where several issues are tried and submitted to the jury, the general verdict must stand, if the evidence upon one issue alone is sufficient to sustain the verdict." (*Estate of Hellier,* 169 Cal. 77, 83 [145 P. 1008].) Compare also the following statements, not completely in point here but nevertheless adding support to our conclusion that no reversal is required: "[A]n instruction, erroneous or correct, which relates to matters as to which there is no evidence will not justify a reversal unless it has misled the jury to the prejudice of the appellant." (*Mehollin* v. *Ysuchiyama,* 11 Cal.2d 53, 57 [77 P.2d 855].) "Presumptively, however, an erroneous proposition of law, referring in no way to the evidence in the case submitted to the jury, has not prejudiced the defendant." (*Marston* v. *Pickwick Stages, Inc.,* 78 Cal.App. 526, 533 [248 P. 930], quoting from *Bosqui* v. *Sutro R. R. Co.,* 131 Cal. 390, 401 [63 P. 682].) As the verdict could as a matter of fact correctly be based only on *respondeat superior* and could be based on lack of inspection in accordance with the incorrect instruction only if the jury overlooked the lack of evidence of proximate causation contrary to the other instruction given we do not feel constrained to hold that the jury was misled to defendant's prejudice.

 Appellant also complains of instructions which allegedly do not sufficiently restrict its duties towards licensees. Under our holding that John as a matter of law did not be-

come a licensee and that appellant's duties remained the duties towards invitees, more onerous than those stated in the instruction here attacked, appellant could not be prejudiced even if the instruction had been in itself incorrect, as to which contention we express no opinion. Finally appellant complains of the refusal of certain instructions proposed by it. As all of them were based on theories urged by appellant but rejected herein the refusal was correct.

Judgment affirmed.

Goodell, J., and Jones, J. pro tem., concurred.

A petition for a rehearing was denied June 11, 1952, and appellant's petition for a hearing by the Supreme Court was denied July 10, 1952. Edmonds, J., and Schauer, J., were of the opinion that the petition should be granted.