[Civ. No. 17012. First Dist., Div. Two. Apr. 11, 1957.]

DANIEL FREEMAN, a Minor, etc., et al., Appellants, v. LOUIS MAZZERA et al., Respondents.

M. Mitchell Bourquin, Franklin A. Dill and William B. Boone for Appellants.

Barfield & Barfield, Arthur A. Hyman and Frank W. Prideaux, Jr., for Respondents.

DOOLING, J.—This action was one for damages for injuries received by Daniel Freeman, a minor, in a fall from an opening off the landing of the stairway of the apartment house in which he lived with his mother and father. Defendant Schmidt was the builder of the apartment and the other defendants its owners. The court granted a nonsuit as to all defendants and plaintiffs appeal.

The apartment building was constructed by respondent Schmidt in 1950. The building housed four apartments, two on the ground floor and two on the second story. A common entrance and stairway served these apartments. There was a landing on the stairway midway between the two floors and in the outer wall adjacent to this landing there was an opening 32 inches wide and 9 feet 8 inches high. The bottom of this opening was 19 inches above the floor of the landing. The lower part of this opening was protected by an iron lattice frame attached to the outside of the building.

Children had been in the habit of playing in this opening, using its lower edge as a platform on which to stand and sit and one of the managers of the apartment testified that she had seen children playing there from time to time.

On August 4, 1953, the minor plaintiff, who was then 4 years of age, was playing on this ledge when the iron lattice gave way precipitating him to the ground.

The lattice work had been attached to the building at the time of its construction. It was fastened to the building by four 2½ inch screws, one at each corner of the iron-work which measured over-all 6 feet 2½ inches by 32 inches. There was testimony by several witnesses that the screws holding this lattice had become loose and that the lattice work had been loose for at least a year before the accident. The lattice work had never been inspected and no repairs were ever made upon it. The witness who replaced the iron-work after the accident, with eight years' experience in installing and repairing similar iron-work, testified that in his opinion this particular

lattice work, installed as it had been, should have been inspected at least once a year.

### Liability of Respondent Owners

■ The stairway was a common one reserved by the owners-lessors and under their control. They thus owed the tenants and other invitees a duty to use ordinary care to keep this area in a safe condition. (*Harris* v. *Joffe,* 28 Cal.2d 418 [170 P.2d 454].) Respondents admit this general rule but argue that the case falls under an exception because the injured child was putting the opening and lattice to a use not reasonably intended. ■ The exception does not apply to small children. (*Crane* v. *Smith,* 23 Cal.2d 288 [144 P.2d 356]; *Roberts* v. *Del Monte Properties Co.,* 111 Cal.App.2d 69 [243 P.2d 914].) In the Crane case a 3-year-old girl inserted her finger in an unguarded coffee-grinder in a market. The court held the market owner liable saying at page 300 of 23 Cal.2d: "To say that a three year old girl . . . was . . . a trespasser when she followed a childish impulse to put her hand on or in the fascinating red contrivance . . . would be to extend the doctrine of the cases denying compensation to one who has exceeded the scope of his invitation beyond their logical scope." In the Roberts case a 7-year-old boy was injured when he fell through a window from a pile of furniture and mattresses left in a common hallway of an apartment building. In that case at page 73 of 111 Cal.App.2d this court held that the rule that one making an unintended use of the property cannot recover for its negligent maintenance is "inapplicable to infant invitees attracted by dangerous objects . . ."

■ Here the owners, with knowledge through their manager that small children were playing near and upon this lattice work, made no inspection of, and no repairs to it, although it had been loose for at least a year before the catastrophe to the child. ■ "The duty was not limited to conditions actually known by the owner to be dangerous, but extended also to conditions which might have been found dangerous by the exercise of reasonable care." (*Blumberg* v. *M. & T. Inc.,* 34 Cal.2d 226, 229 [209 P.2d 1].)

### Liability of the Builder, Schmidt

■ The four $2\frac{1}{2}$-inch screws were inserted through the iron-work, which was $\frac{3}{16}$ inches thick, and through a $\frac{3}{4}$-inch stucco finish into the wooden siding behind the stucco. There

were no wooden studs at these points. Respondent Schmidt testified that he knew that the only fastening for this iron-work, which measured over 6 feet by 32 inches, was these four 2½-inch screws inserted at its corners. His liability must be based, if it exists, on the rule of *Hale* v. *Depaoli*, 33 Cal.2d 228 [201 P.2d 1, 13 A.L.R.2d 183]. In that case it was held that a jury might hold a builder liable for the giving way of a railing if it was negligently installed by him under the rule that ''(i)f the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger.''

The witness who actually installed the iron-work, while he testified that when the screws were in it was tight, gave an affirmative answer to the question: ''Well, now . . . in the cases where the screw, such as we have here . . . wouldn't go through the stud behind it, but just merely through the stucco and then the sheathing; then in those cases you use a toggle bolt, don't you, in order to firmly affix the iron lattice work such as this that we're talking about?'' The witness replied: ''Commonly known as a butterfly.'' He went on to explain that a toggle bolt or butterfly has two wings that open behind the material through which it is inserted and that ''keeps it from pulling out.'' In replacing the iron-work after this accident such butterflies or toggle bolts were in fact used. The evidence further shows that within approximately three years after these buildings were completed not only this particular lattice but most of those similarly installed had become loose. On the whole evidence the jury could have reasonably found that the lattice work was negligently installed and the builder Schmidt had knowledge of that fact.

Respondent Schmidt attempts to distinguish the Depaoli case on the ground that Depaoli was owner as well as builder, but the court in the Depaoli case held the evidence sufficient to support a finding against him *as builder*, but *not sufficient to impose liability* on Depaoli *as owner*.

The passage of about three years between the construction and the accident cannot *per se* exonerate Schmidt. In the Depaoli case 18 years had elapsed and the court said at page 232 of 33 Cal.2d: ''But these incidents of the mere passage of time present questions of fact and not of law.''

The court in the Depaoli case found the conditions for liability in the fact that ''(t)he purpose of the railing was to prevent one using the porch from stepping or falling from it.'' *Pari passu* the purpose of the lattice work over the open-

ing was to prevent persons from accidentally falling through the opening.

Judgment of nonsuit reversed as to all defendants.

Kaufman, P. J., and Draper, J., concurred.