Filed 10/31/14

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| NAN LAWRENCE et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> LA JOLLA BEACH AND TENNIS CLUB, INC. et al., <br><br> Defendants and Respondents. | D064261 <br><br><br> (Super. Ct. No. 37-2010-00101462- CU-PO-CTL) |
| MICHAEL LAWRENCE, a Minor, etc., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> LA JOLLA BEACH AND TENNIS CLUB, INC. et al., <br><br> Defendants and Respondents. | (Super. Ct. No. 37-2011-00102538- CU-PO-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Randa

Trapp, Judge.  Reversed.

Law Offices of Martin N. Buchanan and Martin N. Buchanan for Plaintiffs and Appellants.

Michelman & Robinson, David M. Samuels and Robin James for Defendants and Respondents.

When he was five years old, plaintiff Michael Lawrence fell from a window in his family's second story hotel room at the La Jolla Beach and Tennis Club and suffered serious head and brain injuries. Michael's parents, Nan Lawrence and Jeff Lawrence, filed a first amended complaint against La Jolla Beach and Tennis Club, Inc. and La Jolla Beach and Tennis Club Partners, L.P. (defendants) seeking damages under the following three causes of action sounding in negligence: "Negligence," "Dangerous Condition of Property," and "Negligent Infliction Of Emotional Distress." Michael, through his mother as guardian ad litem, later filed a separate complaint alleging the same causes of action.[1] After the court consolidated the cases, defendants filed separate motions for summary judgment on the two complaints.[2] The court granted both motions and entered judgment in favor of defendants.

---

[1] We will refer to Michael and his parents collectively as plaintiffs, and occasionally refer to the parents by their first names for convenience, intending no disrespect.

[2] The parents' first amended complaint also included a cause of action for intentional infliction of emotional distress that was not addressed in defendants' summary judgment motion and is not mentioned in the parties' briefs. The disposition of that cause of action is unclear. However, the record includes a copy of the superior court's register of actions for this case, and that document shows defendants filed a demurrer to the first amended complaint. Presumably, the demurrer was successful as to the cause of action for intentional infliction of emotional distress.

Plaintiffs contend the court erred in ruling that (1) defendants had no duty and breached no duty to install a fall prevention device on the window from which Michael fell; and (2) the accident was not caused by defendants' failure to install a fall prevention device on the window. We reverse.

FACTUAL AND PROCEDURAL BACKGROUND

Defendants owned and operated the La Jolla Beach and Tennis Club Hotel at the time of Michael's accident. Jeff and Nan Lawrence and their three sons checked into the hotel on October 4, 2008. They were on a family vacation to celebrate the sixth birthday of Michael and his twin brother Luke. Nan requested a room on the first floor of the hotel when she made the reservation, but when the family checked into the hotel there were no rooms available on the first floor until the next day, so they checked into a room on the second floor.

On the morning of October 5, 2008, Nan opened the window from which Michael fell because she wanted to hear the ocean. The three boys were playing, eating grapes, and coloring in their coloring books near the sofa. Jeff and Nan were sitting at the kitchen table just to the left of the window. Jeff was looking at his computer and Nan was going through papers to plan the family's schedule of activities for the day when they heard Luke scream. They looked up and Michael was not in sight. He had fallen out of the window onto concrete pavement and suffered serious head and brain injuries as a result. When he fell, the window's screen popped out and fell to the ground. The sill of the window is 25 inches above the floor and at least four to six inches deep. Michael

3

testified in his deposition that he put his foot on the windowsill and fell when he "leaned forward to see something."

After the court consolidated the two cases, defendants filed a motion for summary judgment, which they intended to be directed at both Jeff and Nan's first amended complaint and Michael's complaint. However, the court construed the motion as being directed only at Jeff and Nan's first amended complaint. Defendants sought summary judgment against Jeff and Nan on the following grounds: (1) Jeff and Nan's own carelessness and failure to use precautions caused Michael's fall; (2) defendants were not negligent in the ownership and operation of the premises; (3) the window complied with all applicable building codes; (4) the screen through which Michael fell was not a safety device; and (5) plaintiffs were never guaranteed a ground floor room.

Defendants' moving papers included the expert declaration of Stephen D. Olsen, a certified building inspector, who stated that the subject window complied with all applicable building codes and there was nothing in the codes that required the window to have "window restrictors." Olsen further stated: "[W]indow screens are not now, nor have they ever been, intended as safety devices. Window screens are intended to keep insects out and there is nothing in the applicable building codes and standards that required a window screen that could serve as a safety device on that window."

In opposition to the motion, Jeff and Nan argued the window's compliance with building codes did not establish that defendants were not negligent and defendants had not offered any evidence to meet their burden of establishing they were not negligent. Jeff and Nan argued there were triable issues of fact as to whether defendants were

4

negligent in failing to take safety measures that would have prevented Michael's accident, and whether their negligence in failing to take such safety measures caused the accident.

Jeff and Nan submitted deposition testimony of Hawley Stevens, the hotel's former director of operations. Stevens testified that he made the decision to place bars on the hotel's ocean front bay windows. He explained that the majority of the bay windows were seats with cushions and pillows on them and "leaning against them was an issue . . . ." When asked about the purpose of putting bars on those windows, he testified that guests leaning against the windows "were basically pushing screens out, or it was more of a support and a protection too." Placing the bars on the windows minimized the screens' falling out. Counsel asked Stevens, "Is it fair to say that the reason that the bars were placed on the window was because of a concern of something or somebody falling out the window?" Stevens answered, "Yes."

Jeff and Nan also submitted the expert declaration of Zachary M. Moore, a mechanical engineer with "extensive technical and practical experience in conducting safety investigations and analysis of premises." Moore inspected the subject hotel room, discovery materials, and relevant codes and standards. He noted there were safety bars on two of the windows in the room and on windows in other ocean facing rooms, but not on the window from which Michael fell. He further noted that on the day of the accident there was no restrictive device to keep the window from opening all the way and the screens provided no safety resistance. Moore's professional opinion was that the hotel room was in a dangerous condition on the day of the accident, defendants were negligent

5

in failing to provide safety bars or other safety measures for the window, and their negligence was the direct cause of Michael's falling out of the window.

Moore averred that on average, 18 children ages 10 and under die annually from falls from windows. Consequently, the United States Consumer Product Safety Commission asked the American Society for Testing and Materials (ASTM) to develop standards for devices that would protect children from falling out of windows. A subcommittee of ASTM developed two such standards. In Moore's words, "[d]evices covered by the standards fall into one of three groups: [¶] Fall prevention window guards, which consist of closely spaced bars in the device designed to fit into or onto the window frame and keep children from falling through it; [¶] Window fall prevention screens, which are an attached mesh or material that fits into or onto a window, must possess sufficient strength to prevent a child from falling through an open window and are totally different in design, look and function from standard insect screens; and [¶] Window opening control devices, which limit windows opening to 4 inches or less unless a release mechanism (one that resets) is deliberately undone." Moore opined that the accident was foreseeable and preventable, and that "had the defendants used reasonable care to protect their guests, by installing something as simple as a wooden bar or thumb screw within the window tracks to prevent the window from being able to open wide enough for a child to fit through, this incident never would have occurred."

Defendants filed a supplemental declaration of Olsen in response to Moore's declaration. Olsen stated that ASTM standards are manufacturing standards that do not apply to "end users" like defendants unless state or local government has adopted them.

6

His research revealed that the ASTM standards cited by Moore had not been adopted by the state, San Diego County, or the City of San Diego. He therefore concluded that the ASTM standards did not apply to defendants. He asserted that neither of the two ASTM standards that Moore cited applied to the window at issue in this case because one applies only to windows that are more than 75 feet above the ground, and the other applies only to new construction and had not been adopted into the California Building Code.

The court granted defendants' motion for summary judgment on Jeff and Nan's first amended complaint, ruling that "defendants did not breach their duty of care and the accident was not caused by defendants' failure to install a safety device on the window." The court stated: "Given that the Building Code requirements were met, the height of the window, the fact that Michael's mother opened the window, the parents were nearby but distracted, the window was not in a common area over which defendants had sole control, and there were no prior incidents of anyone or anything falling from any windows, it was not foreseeable that a minor would fall out. As such, defendants' duty did not include taking additional protective measures for the subject window. [Citation.] [¶] Accordingly, defendants did not breach their duty of care to prevent the kind of accident which occurred here. The accident occurred in a hotel room. While a hotel owner arguably may foresee that its guests might open a second story window and not watch their child near the open window, the owner is not required to forestall the foreseeable consequences of others' negligent conduct. Defendants could properly assume that parents would take precautions to supervise their children and prevent them from falling

7

out windows." Based on its summary judgment ruling, the court entered judgment in favor of defendants and against Jeff and Nan.

After the court issued its summary judgment ruling, defendants filed a second motion for summary judgment on Michael's complaint on the grounds that (1) they had no duty to install safety devices on the subject window; (2) there was no code violation related to the window; (3) the window was not in a common area of the hotel; (4) the window's screen was not designed or intended to operate as a safety device; (5) there had never been any prior similar incidents; and (6) plaintiffs were never guaranteed a ground floor room. Michael's opposition to the motion was essentially the same as Jeff and Nan's opposition to defendants' first summary judgment motion, including its reliance on Moore's expert declaration.

The court granted the motion for summary judgment on Michael's complaint, ruling again that "defendants did not breach their duty of care and thus, the accident was not caused by defendants' failure to install a safety device on the window." In its written order the court discussed the following two cases involving a child's falling out of a window: *Pineda v. Ennabe* (1998) 61 Cal.App.4th 1403 (*Pineda*), on which defendants relied and *Amos v. Alpha Property Management* (1999) 73 Cal.App.4th 895 (*Amos*), on which Michael relied in opposing the motion.

The court stated: "In *Pineda* the minor fell out a second story window in his apartment. The window was approximately 44 inches above the floor level, but the minor's mother had placed a bed under the window. [Citation.] Somewhat similar to the facts here, there was uncontroverted evidence that protective bars had been installed on

8

some windows (those with sills 18 inches above the floor).  [Citation.]  The *Pineda* court held the owner/landlord owed no duty of care.  'While a landlord arguably may foresee that his tenants might carelessly leave their small children unattended and exposed to dangers, he is not required to forestall the foreseeable consequences of others' negligence–only his own.'  [Citation.]  The *Pineda* court was also mindful of the consequences of imposing a new duty to prevent children from falling from windows."

Regarding *Amos, supra,* 73 Cal.App.4th 895, the court stated:  "The *Amos* case, decided after *Pineda*, concerned a window that was approximately 28 inches from the floor on the second story of an apartment building.  The *Amos* court held there was a triable issue of fact as to whether the defendants' maintenance of a low, open, unguarded window in a common hallway of an apartment building where they knew young children were likely to play constituted a breach of their duty to take reasonable precautions to prevent children falling out of the window.  [Citation.]  The *Amos* court distinguished *Pineda* because in *Amos* it was reasonably foreseeable a toddler would wander to the common area hall, be attracted by an open window and fall out.  It was not the kind of case in which negligent supervision, if any, affected the landlord's duty of care, as was the case in *Pineda*."

The court found *Pineda, supra,* 61 Cal.App.4th 1403, "more persuasive and applicable to the facts here" because it was "undisputed that plaintiff's fall occurred in a room exclusively occupied by his family at the time of the accident and not in defendants' common area[.]"  The court concluded:  "Given that the Building Code requirements were met and the height of the window was 25 inches from the floor, the fact that

9

Michael's mother opened the window, the parents were nearby but distracted, the window was not in a common area over which defendants had sole control, and there were no prior incidents of anyone or anything falling from any windows, it was not foreseeable that the minor would fall out under these circumstances. As such, defendants' duty did not include taking additional protective measures for the subject window." On May 22, 2013, the court entered an amended judgment in favor of defendants and against all three plaintiffs based on its having granted both of defendants' motions for summary judgment.

DISCUSSION

I

*STANDARD OF REVIEW*

A motion for summary judgment or adjudication must be granted when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) When plaintiffs appeal from an order granting a defense motion for summary judgment, "we independently examine the record in order to determine whether triable issues of fact exist to reinstate the action. [Citation.] . . . 'To prevail on [an] action in negligence, plaintiff[s] must show that defendants owed [them] a legal duty, that they breached the duty, and that the breach was a proximate or legal cause of [their] injuries.' " (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142 (*Wiener*).)

Code of Civil Procedure section 437c "place[s] the initial burden on the defendant moving for summary judgment and shift[s] it to the plaintiff upon a showing that the plaintiff cannot establish one or more elements of the action." (*Wiener, supra,* 32 Cal.4th

10

at p. 1142.)  Accordingly, in a negligence action, "we must determine whether defendants have shown that plaintiffs have not established a prima facie case of negligence, 'a showing that would forecast the inevitability of a nonsuit in defendants' favor.' "  (*Ibid.*) "In performing our de novo review, we view the evidence in the light most favorable to plaintiffs as the losing parties.  [Citation.]  . . .  [W]e liberally construe plaintiffs' evidentiary submissions and strictly scrutinize defendants' own evidence, in order to resolve any evidentiary doubts or ambiguities in plaintiffs' favor."  (*Ibid.*)  We apply "the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222.)

II

*DUTY*

"The existence of duty is a question of law to be decided by the court [citation], and the courts have repeatedly declared the existence of a duty by landowners to maintain property in their possession and control in a reasonably safe condition."  (*Vasquez v. Residential Investments, Inc.* (2004) 118 Cal.App.4th 269, 278 (*Vasquez*).)  Similarly, a hotel owner or "innkeeper" owes a duty to its guests to maintain the premises in a reasonably safe condition.  (*Stowe v. Fritzie Hotels* (1955) 44 Cal.2d 416, 420-421; *Schlemmer v. Stokes* (1941) 47 Cal.App.2d 164, 167 (*Schlemmer*) [viewed as an innkeeper, defendant was not an insurer of the safety of the plaintiff, but owed plaintiff the duty of exercising reasonable care to keep the premises in a safe condition].)  This court has observed that "[h]otel proprietors have a special relationship with their guests

11

that gives rise to a duty ' "to protect them against unreasonable risk of physical harm." ' [Citation.] ' " 'The duty in each case [as with common carriers] is only one to exercise reasonable care under the circumstances. The defendant is not liable where he neither knows nor should know of the unreasonable risk . . . .' " ' [Citation.] However, hotel guests can reasonably expect that the hotel owner will be reasonably diligent in inspecting its rooms for defects, and correcting them upon discovery." (*Howard v. Omni Hotels Management Corp.* (2012) 203 Cal.App.4th 403, 431-432.)[3]

In *Vasquez*, this court recognized that "the broad proposition that landowners [or innkeepers] have a duty to exercise reasonable care to maintain their property in a safe condition provides scant guidance to a court that must determine the existence of the landlord's duty in a particular case."[4] (*Vasquez, supra,* 118 Cal.App.4th at p. 279.) " ' "[D]uty" is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same—to conform to the legal standard of reasonable conduct in the light of the apparent risk.' [Citation.] Thus, although the articulated standard is the same, the question of what is reasonable will depend in each case on the particular circumstances facing that defendant

---

3    Although the duty owed by an innkeeper to its guests is essentially the same as that owed by a landlord to its tenants – i.e., to maintain the premises in a reasonably safe condition – as one court observed, "[t]he rule which applies to landlords does not always apply to innkeepers. An innkeeper is in *direct and continued control* of his guest rooms, while a lessee may be expected to do many things for his own protection." (*Crosswhite v. Shelby Operating Corp.* (Va. 1944) 30 S.E.2d 673, 674 (*Crosswhite*), italics added.)

4    All subsequent references to the duty of a landlord or landowner in our discussion of relevant case law applies equally to hotel owners or "innkeepers."

12

considering the foreseeability of the risk of harm balanced against the extent of the burden of eliminating or mitigating that risk." (*Ibid.*)

Accordingly, the issue concerning a landlord's duty is not the *existence* of the duty, but rather the *scope* of the duty under the particular facts of the case. (*Vasquez, supra,* 118 Cal.App.4th at p. 280.) Reference to the *scope* of the landlord's duty "is intended to describe the specific steps a landlord must take in a specific circumstance to maintain the property's safety to protect a tenant from a specific class of risk. It is this question that we decide as a matter of law." (*Ibid.*) A court deciding the issue of the scope of a landlord's duty "should limit its inquiry to the specific action the plaintiff claims the particular landlord had a duty to undertake in the particular case. . . . Only after the scope of the duty under consideration is defined may a court meaningfully undertake the balancing analysis of the risks and burdens present in a given case to determine whether the specific obligation should or should not be imposed on the landlord. If only the broad proposition that landlords have a duty to exercise reasonable care to maintain their property in a safe condition is considered rather than focusing on the scope of duty, then in every premises liability negligence case the existence of the duty is present, there is no duty issue for the court to determine and each case would be decided by the jury's determination of breach of duty, causation and damages. The law has not evolved in this manner." (*Ibid.*)

Although the factors to be weighed in determining the scope of a defendant's duty will vary in each case, the two primary considerations are the foreseeability of the harm and the burden on the defendant of protecting against the harm. (*Vasquez, supra,*

13

118 Cal.App.4th at p. 280.) " ' " '[I]n cases where the burden of preventing future harm is great, a high degree of foreseeability may be required. [Citation.] On the other hand, in cases where there are strong policy reasons for preventing the harm, or the harm can be prevented by simple means, a lesser degree of foreseeability may be required. ' " ' " (*Id.* at p. 281.)[5]

In considering the issue of duty in the present case, we are mindful that "[a] greater degree of care is generally owed to children because of their lack of capacity to appreciate risks and to avoid danger. [Citation.] A landowner similarly shares that duty to 'protect the young and heedless from themselves and guard them against perils that reasonably could have been foreseen.' [Citation.] The determination of the scope of foreseeable perils to children must take into consideration the known propensity of children to intermeddle." (*McDaniel v. Sunset Manor Co.* (1990) 220 Cal.App.3d 1, 7; *Wiener, supra,* 32 Cal.4th at p. 1145 ["When children are the focus of care, the landlord's duty is to protect the young from themselves and guard against perils that are reasonably foreseeable."].)

Regarding the scope of a defendant landlord's duty under circumstances where a child falls out of a hotel or apartment window, *Pineda* and other cases support the proposition that a landlord generally does not have a duty to take measures to prevent a

---

5    Although *Vasquez* and most of the California cases it cites involve claims that a landowner was negligent in failing to protect the plaintiff from a third party criminal assault, its discussion of general principles regarding the element of duty apply to negligence claims generally. (See *Campbell v. Ford Motor Co.* (2012) 206 Cal.App.4th 15, 33 [foreseeability and the extent of the burden to the defendant are the primary factors to be considered in California on the question of legal duty].)

14

child from falling out of an upper story apartment window. (*Pineda, supra,* 61 Cal.App.4th at pp. 1405, 1408-1409 [landlord has no duty to assure that children do not fall out of ordinary second story windows]; *Schlemmer, supra*, 47 Cal.App.2d at p. 167 ["It is a matter of common knowledge that a screen is not placed in a window for the purpose of keeping persons from falling out."]; *Gustin v. Williams* (1967) 255 Cal.App.2d Supp. 929, 931-933 [landlord not liable for injury to two year old who fell out of window with screen that had no locking or latching mechanism].)

However, other cases have decided a landlord owes a duty to protect children from falling out of windows when the condition or design of the window or other circumstances increase the risk to small children of falling from the window. In *Amos*, a two-year-old boy fell out of a low, open, unprotected window in a common area hallway of an apartment building. (*Amos, supra,* 73 Cal.App.4th at pp. 896-897.) Reversing a summary judgment in favor of the defendants (the landlord and property manager), the *Amos* court decided the defendants had failed to show, as a matter of law, that they neither owed nor breached a duty of care to the plaintiff. (*Id.* at p. 898.) The *Amos* court observed that the scope of a landlord's duty to exercise due care for the safety of tenants in areas under the landlord's control included "adopting *reasonable precautions* to prevent young children from toppling out of windows in common areas of the building.[6]" (*Ibid.,* original italics.)

---

6    In a footnote at this point, the *Amos* court stated: "[Plaintiff] does not contend . . . the defendants had a duty to assure no child could fall from an upper story window under any circumstance. Landlords are not insurers of their tenants' safety

15

In holding that the defendants had a duty to take precautions to prevent the plaintiff's fall, the *Amos* court relied on a number of cases in which a landlord or hotel owner was determined to owe a duty of care to protect a child from falling out of a window. In *Roberts v. Del Monte Properties Co.* (1952) 111 Cal.App.2d 69 (*Roberts*) the Court of Appeal affirmed a judgment for a seven-year-old boy who fell out of an open fourth floor hallway window of a hotel where he was residing. The plaintiff was playing on the top mattress when "he accidentally tumbled backward towards the open window behind the pile, the screen in it gave way, and the boy and screen fell into a patio." (*Id.* at p. 72.) The *Amos* court observed that the *Roberts* court "held the landlord owed the child a duty 'based on the general principle that the person in possession of premises must take such precautions for the safety of his business invitees as are reasonable under all circumstances, considering their relation, the burden of the interference with his own affairs and the danger to the invitees to be anticipated, and that special caution is required in behalf of invitees of immature age whose inability to appreciate and propensity to ignore certain dangers he ought to consider.' " (*Amos, supra,* 73 Cal.App.4th at pp. 898-899, quoting *Roberts, supra,* at p. 74.)

In *Freeman v. Mazzera* (1957) 150 Cal.App.2d 61 (*Freeman*), the four-year-old plaintiff was injured in a fall from an opening off the landing of the stairway of his apartment building. (*Id.* at p. 62.) The opening was 32 inches wide and 9 feet 8 inches

---

[citation] and are not required to make their premises absolutely 'child proof' by providing every possible safeguard against injury to children on their premises. [Citation.] This does not mean, however, defendants had no duty to take reasonable precautions against the foreseeable risk a child could fall from an upper story hall window." (*Amos, supra,* 73 Cal.App.4th at p. 898, fn. 1.)

16

high, and the bottom of the opening was 19 inches above the floor. (*Ibid.*) The lower part of the opening was protected by an iron lattice frame attached to the outside of the building and children had habitually played in the opening, using its lower ledge as a platform. (*Ibid.*) The plaintiff fell when he was playing on the lower ledge and the iron lattice gave way. (*Ibid.*) The *Amos* court noted that the *Freeman* court "held the landlords owed their tenants 'a duty to use ordinary care to keep [the stairway] area in a safe condition.' [Citation.] There was evidence the landlords breached this duty because they failed to inspect or repair the lattice work even though they knew young children played on the window ledge and knew the lattice had been loose for at least a year before the accident. [Citation.] The court rejected the landlords' argument they owed no duty in this case because the injured plaintiff was putting the opening and the lattice to a use not reasonably intended. Citing *Roberts* . . . , the court held this argument 'does not apply to small children.' " (*Amos, supra,* 73 Cal.App.4th at p. 899, quoting *Freeman, supra,* at p. 63.)

The *Amos* court also discussed *Brady*, in which a three-year-old boy fell out of a second story apartment window, which his mother had left open because the central air conditioning unit that normally cooled the apartment had been inoperative for several days. (*Brady v. Rivella Developers, Inc.* (La.Ct.App. 1982) 424 So.2d. 1104, 1105 (*Brady*).) The window had a screen and "[t]here was a ledge within the window opening, only inches off the floor, in which a child could sit, stand, or kneel. The screen was framed by light-weight aluminum and had fasteners on the top and bottom to keep it in place." (*Ibid.*) While he was talking to other children on the ground, the plaintiff pressed

17

against the screen and fell when the screen fasteners gave way. (*Ibid.*) The *Amos* court noted the *Brady* court "held that the landlord had a duty not to create or maintain an unreasonable risk of harm to others . . . ." (*Amos, supra,* 73 Cal.App.4th at p. 900, citing *Brady, supra,* at pp. 1105-1106.) The *Brady* court upheld the lower court's finding that the defendants breached that duty by maintaining a condition that presented an unreasonable risk of harm to children. (*Id.* at p. 1106.)

Based in part on these cases, the *Amos* court held that the defendants in *Amos* "had a duty to take reasonable precautions to prevent [the plaintiff] from falling out of the large hole they maintained at the end of the second floor hallway." (*Amos, supra,* 73 Cal.App.4th at p. 900.) The court decided there was a triable issue of fact as to whether the defendants breached their duty of care by maintaining a low, open, unprotected hallway window on the second floor of the apartment building, knowing that young children were likely to play in that area. (*Ibid.*)

In addition to the cases discussed in *Amos, supra,* 73 Cal.App.4th 895, there are two other noteworthy cases that concern a hotel owner's duty to protect small children from falling out of upper story windows. In *Baker v. Dallas Hotel Co.* (5th Cir. 1934) 73 F.2d 825 (*Baker*) a two-year-old boy was killed when he fell from a 12th story hotel window. (*Id.* at p. 826.) The window was open but the opening was covered by a wire window screen that was not securely fastened to the window frame. (*Ibid.*) The child climbed onto the windowsill while his father was in bed with his back turned toward the window a few feet away and his mother was in the bathroom. (*Ibid.*) When the mother returned from the bathroom she saw the child sitting sideways on the windowsill with his

18

head pressed against the screen, but before she could reach him the screen opened outward and he fell out of the window. (*Ibid.*) There were heavy iron grills outside some of the hotel windows, but not the one from which the child fell. (*Ibid.*)

Reversing a directed verdict for the defendant hotel, the *Baker* court reasoned, "An innkeeper is not an insurer of the safety of his guests, but owes to them ordinary care to see that the premises assigned to them are reasonably safe for their use and occupancy. [Citations.] When a child of tender years is accepted as a guest, the inexperience and natural tendencies of such a child became a part of the situation and must be considered by the innkeeper. We do not mean that the innkeeper becomes the nurse of the child, or assumes its control when [the child is] accompanied by its parents, but only that he is bound to consider whether his premises, though safe enough for an adult, present any reasonably avoidable dangers to the child guest. The control and general responsibility for the child accompanied by a parent or nurse is with the latter, who are also bound to exercise ordinary care to keep the child from harm. As has been stated, when parents are complaining of the negligence of the innkeeper, their own negligence which contributes to the injury is a good defense to their suit. Negligence is not attributable as such to a child of 2 1/2 years. [Citation.] The conduct of such a child being natural, spontaneous, and instinctive, is like that of an animal, and is similarly to be anticipated and guarded against by those charged with any duty in respect to the child. What then should this innkeeper and these parents have anticipated that this child might do, and what have they respectively done or failed to do that was negligent? There is no statutory requirement respecting hotel windows or window screens obedience to which would be diligence and

19

failure to comply with which would be negligence per se. There is no course of decisions establishing any rule applicable specially to children and hotel windows. *The only available standard of care is the conduct of the ideal person of ordinary prudence, to be judged of by the jury as a question of fact.* A jury should consider whether the defects attributed to this screen were known to the innkeeper or had existed for such time as that he is to be charged with knowledge of them, whether he should in due prudence have anticipated that a child of this age would be attracted towards the window and would climb to see what was outside and might be led to lean against the insecure screen and be endangered, and whether another room or at least a warning about the insecurity of this screen was due. On the other hand, the jury ought also to inquire whether the parents should not have anticipated the same danger and kept better watch over the child or have tested the screen, and whether they themselves were contributorily negligent if the innkeeper was negligent. The innkeeper and the parents perhaps ought equally to have anticipated the danger of a child trying to get into the window, but the duty of inspecting the screen is not the same. The responsibility for the premises is primarily on the innkeeper, and the guest may generally assume that they are safe. But it is argued that the screens are there to keep insects out and not to keep children in, and there is no duty on the innkeeper to have them safe for the latter purpose, and parents have no right to rely on them for such purpose. . . . But yet if the screen to all appearances, and as screens are usually found, would serve to protect the child, the false appearance of an insecurely fastened screen might easily mislead the parent or even inspire confidence in a child to lean against it. [Citation.] Though there was no original duty to have any screen in the

20

window for the purpose of keeping the child in, the jury might conclude that prudence would as respects this child have required that it be as securely fastened as screens customarily are, lest it prove a deception and a trap. . . . Children have often fallen through insecurely fastened window sashes and screens, so that the jury might conclude that such a thing is reasonably to be anticipated by those under duty to guard against danger." (*Baker, supra,* 73 F.2d at pp. 827-828, italics added.)

In *Crosswhite*, a three-year-old girl was killed under circumstances nearly identical to those in *Baker, supra,* 73 F.2d 825. The child and her mother were guests in a fourth floor hotel room and the mother left the child playing in the bedroom while she went into the bathroom to wet a cloth to use on the child's younger sister. (*Crosswhite, supra,* 30 S.E.2d at p. 673.) When the mother returned she saw the child standing on the window sill with her back to the window screen. (*Ibid.*) The mother rushed to rescue the child, but before she could reach her the child leaned against the screen and fell out of the window. (*Ibid.*) Reversing a judgment entered in favor of the defendant hotel owner after the trial court sustained the defendant's demurrer to the complaint filed by the child's administrator, the *Crosswhite* court quoted extensively from *Baker* (*Crosswhite,* at p. 674) and stated that "[t]he duty of an innkeeper to keep his premises reasonably safe applies to 'defective or insecurely or unsafely fastened window screens.' " (*Id.* at p. 675.)

The *Crosswhite* court concluded the hotel owner's liability for negligence presented questions for the jury, stating: "In the instant case, we do not know the height of this window sill from the floor, but it was low enough for this three-year old child to climb upon it. The window was open; it was summertime, and this three-year old child

21

could not have opened it. The mother saw the wire screen and had a right to assume that this screen was fastened as wire screens ordinarily are fastened. It can be argued that she would not have left her child in a room with an unscreened open window, whose sill was low enough for this three-year old child to climb upon it; and that she did leave it because she was lulled into safety by seeing what seemed to be a perfectly good screen. While screens are installed to keep bugs out, they do afford some protection to little children; and its presence here lulled the mother into a false sense of security. It can be further argued that the innkeeper knew of its defects or should have known of it. Almost without exception these are jury questions; from which it follows that the judgment appealed from must be reversed, and that the case should be remanded for a new trial upon its merits." (*Crosswhite, supra,* 30 S.E.2d at p. 675.)

We conclude that defendants in the present case have not met their summary judgment burden to show they had no duty of care to prevent the type of accident that occurred in this case – i.e., they have not shown that the scope of their duty of care did not extend to taking measures to prevent small children from falling from second story windows like the one at issue in this case. As we discussed above, a greater degree of care is generally owed to children because of their lack of capacity to appreciate risks and avoid danger. (*McDaniel v. Sunset Manor Co., supra,* 220 Cal.App.3d at p. 7; *Wiener, supra,* 32 Cal.4th at pp. 1145-1146.) As the *Baker* court noted, when a child of tender years is accepted as a hotel guest, the hotel owner "is bound to consider whether his premises . . . present any reasonably avoidable dangers to the child guest." (*Baker, supra,* 73 F.2d at p. 827.) It is reasonably foreseeable that guests in defendants' ocean front

22

hotel rooms will open windows to let in ocean breezes and enjoy the sound of the ocean, and that a five-year-old child will stand on the sill of a window that is 25 inches above the floor. As *Brady, supra,* 424 So.2d 1104, *Baker, supra,* 73 F.2d 825, and *Crosswhite, supra,* 30 S.E. 2d 673 illustrate, it is also reasonably foreseeable that because a five-year-old child who gains access to the sill of an open screened window is unlikely to appreciate that the screen is designed to keep insects out and not keep children in, the child will lean against the screen and fall from the window.

Balancing the foreseeability of the risk of harm against the burden of eliminating or mitigating the risk weighs in favor of a determination that the scope of a hotel owner's duty includes taking measures to protect children from falling from such windows. It is undisputed that there were protective bars on windows in the subject hotel room other than the one from which Michael fell, and Moore's declaration evidenced the availability of other protective devices, including fall prevention screens and window opening control devices.[7] The burden and cost to hotel owners of providing such protective devices to prevent children from falling out of windows is minimal compared to the risk of small children suffering serious injury or death from such falls, particularly in light of the

---

[7] Moore stated that after Michael's accident, defendants "finally installed the window opening control devices . . . ." Although evidence of subsequent remedial measures is not admissible on the issue of liability, "such evidence is relevant and admissible [on the issue of duty] and also on the possibility or feasibility of eliminating the cause of the accident." (*Baldwin Contracting Co. v. Winston Steel Works, Inc.* (1965) 236 Cal.App.2d 565, 573; *Ault v. International Harvester Co.* (1974) 13 Cal.3d 113, 119 ["[E]vidence of subsequent repairs is relevant to the issue of negligence, for if the changes occur closely in time they may well illustrate the feasibility of the improvement at the time of the accident, one of the normal elements in the negligence calculus."].)

obvious public policy of protecting children from accidental serious injury and death. (*Martinez v. Bank of America* (2000) 82 Cal.App.4th 883, 897 ["A policy favoring preventing death by injury to children has extremely high value."].)

Defendants argue that we should follow *Pineda, supra,* 61 Cal.App.4th 1403 and hold that the duty to prevent Michael's fall fell solely on his parents and not defendants because, unlike the accident in *Amos*, the accident here occurred in a unit controlled and occupied by the parents rather than in a common area, and it was caused by the parents' failure to adequately supervise Michael because they were preoccupied with their own activities. Although the accident in *Amos* happened in a common area and the *Amos* court referred to a landlord's duty to exercise due care in maintaining common areas of an apartment building (e.g., *Amos, supra,* 73 Cal.App.4th at p. 898), the cases it discussed in its duty analysis each involved, in its words, "a child who fell from an open window located in a common passageway or *in his or her own apartment.*" (*Ibid.*, italics added.) Thus, the fact that accident in *Amos* occurred in a common area was not dispositive of the duty issue.

Moreover, although the duty of care owed by both landlords and hotel owners is to maintain their property in a reasonably safe condition (*Vasquez, supra,* 118 Cal.App.4th at p. 278; *Stowe v. Fritzie Hotels, supra,* 44 Cal.2d at pp. 420-421), because of the temporary nature of most hotel occupancies, hotel owners generally exercise far greater control over hotel rooms than landlords are able to exercise over leased premises. (*Crosswhite, supra,* 30 S.E.2d at p. 674 ["An innkeeper is in direct and continued control of his guest rooms, while a lessee may be expected to do many things for his own

24

protection."]; *Bullock v. City and County of San Francisco* (1990) 221 Cal.App.3d 1072, 1097 [A hotel guest is not a resident but "a mere lodger, whose possessory rights and interests are vastly inferior to those of a tenant."].) Consequently, a hotel owner's duty to maintain reasonably safe rooms is more akin to the duty to maintain safe common areas than is a landlord's duty to maintain reasonably safe premises. We agree with the *Crosswhite* court that the duty of a hotel owner to keep its "premises reasonably safe applies to 'defective or insecurely or unsafely fastened window screens.' " (*Crosswhite, supra,* at p. 675.)

Regarding the parents' failure to closely supervise Michael, "a parent's negligence in supervising a child may be a factor in determining causation . . . but is generally not a factor in determining duty . . . ." (*Amos, supra,* 73 Cal.App.4th at p. 899, fn. 2.) Further, a parent's negligence is not imputable to a child in an action by the child for injuries, although it may be relevant in determining whether a third party is liable for the injuries. (*Id.* at p. 905.) In any event, whether the parents' failure to supervise Michael amounted to negligence is a question of fact not properly resolved on summary judgment. "[A] parent may be guilty of contributory negligence in not giving proper supervision over a child, but . . . it is a question of fact for the jury to decide whether such lack of supervision was negligence under all the circumstances." (*Christiana v. Rattaro* (1947) 81 Cal.App.2d 597, 599; *Baker, supra,* 73 F.2d at p. 828 ["The duty of parents to watch over their infant child is to be viewed in the light of all the demands made at the time upon them, and the circumstances usually make negligence on their part a question for the jury."].) It is reasonable to expect that a parent will take his or her eyes off a child for

25

brief periods to attend to other matters.  (*Wright v. Standard Oil Co., Inc.* (5th Cir. 1972) 470 F.2d 1280, 1296 ["[E]ven the most careful parent cannot keep an ever-present eye on his child . . . ."].)

As noted, the court based its determination that defendants owed no duty to take "additional protective measures for the subject window" in part on the fact that the window met applicable building code requirements.  However, "a defendant property owner's compliance with a law or safety regulation, in and of itself, does not establish that the owner has utilized due care.  The owner's compliance with applicable safety regulations, while relevant to show due care, is not dispositive, if there are other circumstances requiring a higher degree of care."  (*Howard v. Omni Hotels Management Corp., supra,* 203 Cal.App.4th 403, 421, citing *Amos, supra,* 73 Cal.4th at p. 901.)

The trial court also based its no duty determination on the fact that "there were no prior incidents of anyone or anything falling from any windows . . . ."[8]  However, " '[t]he mere fact that a particular kind of an accident has not happened before does not . . . show that such accident is one which might not reasonably have been anticipated.' [Citation.] Thus, the fortuitous absence of prior injury does not justify relieving defendant from responsibility for the foreseeable consequences of its acts."  (*Weirum v. RKO General, Inc.* (1975) 15 Cal.3d 40, 47; *Lane v. City of Sacramento* (2010) 183 Cal.App.4th 1337,

_____

[8]     The court's statement in its summary judgment order that "there were no prior incidents of anyone or anything falling from any windows" is inaccurate in light of the evidence that defendants put bars on some of the hotel windows because screens fell from the windows when people leaned against them.

26

1346 [absence of other similar accidents is relevant to, but not dispositive of, the issue of whether a condition is dangerous].)

On the record presented, we conclude the defendants failed to carry their burden on summary judgment to establish they owed no duty to take measures to prevent the type of accident that occurred in this case.

III

*BREACH OF DUTY*

Although whether a defendant owed a duty to use reasonable care in a particular factual situation is a question of law for the court to decide, the negligence "elements of breach of that duty and causation are ordinarily questions of fact for the jury's determination." (*Vasquez, supra,* 118 Cal.App.4th 269, 278.) Here, the trial court's finding that defendants did not breach their duty of care was based on its no-duty determination. In both summary judgment rulings, immediately after stating that defendants' duty "did not include taking additional protective measures for the subject window[,]" the court stated: "Accordingly, defendants did not breach their duty of care to prevent the kind of accident which occurred here."

On the record presented, there are triable issues of fact as to whether defendants breached their duty of care and whether such breach caused Michael's accident. Although Moore's declaration includes legal conclusions to which defendants have objected below and on appeal, it also includes admissible factual statements that raise a triable issue of fact as to whether defendants breached their duty of care. Moore noted there were safety bars on two of the windows in the room and on windows in other ocean

27

facing rooms, but not on the window from which Michael fell.[9] He noted Steven's deposition testimony that bars were placed on other windows at the hotel to minimize screens popping out of the windows as a result of people leaning against them and out of "a concern of something or somebody falling out the window[.]"[10] The bottom of the subject window sill was 25 inches from the floor, there was no restrictive device to keep the window from opening all the way, and the screens provided no safety resistance. Moore further noted the undisputable facts that defendants' hotel was a family hotel on the beach and defendants knew that children would occupy the hotel rooms. He described safety devices that could have been placed on the window to prevent a child from falling out of the window, including "something as simple as a wooden bar or thumb screw within the window tracks to prevent the window from being able to open wide enough for a child to fit through . . . ." Based on these facts, a trier of fact could reasonably find that defendants breached their duty to take measures to prevent an accident like Michael's.

IV

*CAUSATION*

California has adopted the "substantial factor" test for cause-in-fact determinations. (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 968.) "A

---

[9] In her declaration in opposition to the second summary judgment motion, Nan stated there was no bench seating next to the windows in the room that had bars on them.

[10] As noted, Stevens answered affirmatively when asked if "the bars were placed on the window . . . because of a concern of something or somebody falling out the window[.]"

defendant's negligent conduct may combine with another factor to cause harm; if a defendant's negligence was a substantial factor in causing the plaintiff's harm, then the defendant is responsible for the harm; a defendant cannot avoid responsibility just because some other person, condition, or event was also a substantial factor in causing the plaintiff's harm; but conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct." (*Yanez v. Plummer* (2013) 221 Cal.App.4th 180, 187.) "Like breach of duty, causation also is ordinarily a question of fact which cannot be resolved by summary judgment. The issue of causation may be decided as a question of law only if, under undisputed facts, there is no room for a reasonable difference of opinion." (*Nichols v. Keller* (1993) 15 Cal.App.4th 1672, 1687.)

The court's summary judgment rulings show that the court based its no-causation determination solely on its determination that defendants did not breach their duty of care.[11] Similarly, defendants argue on appeal that there is no triable issue of fact as to causation because they had no duty to install a fall prevention device on the subject window. We conclude that the same evidence that raises a triable issue of fact as to breach of duty also raises a triable issue of fact as to causation. Because a trier of fact could reasonably find defendants were negligent in failing to take reasonable measures

---

[11]    In its first summary judgment ruling the court stated that "defendants did not breach their duty of care and the accident was not caused by defendants' failure to install a safety device on the window." In the second ruling the court stated that "defendants did not breach their duty of care and *thus*, the accident was not caused by defendants' failure to install a safety device on the window." (Italics added.)

that would have prevented Michael's accident, it could also reasonably find that defendants' negligence was a substantial factor in causing the accident.

## DISPOSITION

The amended judgment entered on May 22, 2013 is reversed.  Appellants are awarded their costs on appeal.


HUFFMAN, J.

WE CONCUR:


BENKE, Acting P. J.


NARES, J.


30